STATE *vs.* ALFRED BRAICA *et al.*

FEBRUARY 2, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an indictment for burglary. After conviction by a jury in the superior court defendants' motion for a new trial was denied. The case is before us on their

exceptions to that decision and to certain rulings during the trial.

It appears in evidence that on July 2, 1948 Francesco Iannarelli and his wife occupied the lower tenement of a two-family house at 764 River avenue in the city of Providence. The front door of that tenement opened onto a porch with a few wooden steps to the sidewalk of the street. A rear room of the tenement had a window which was some six feet from the ground. Iannarelli testified that when he left his home on that evening about 9:30 o'clock to join his wife, who was visiting her mother in East Providence, all doors and windows to the tenement were shut; that about 12:30 a.m. he was notified by the police that his tenement had been entered; and that he immediately went to his home where he found the rear window open and some of the rooms ransacked.

Captain Walter E. Stone of the Providence detective department testified that on the night in question he was in a scout car with detective Saverin Cipolla; that in answer to a radio flash from headquarters he went to 764 River avenue, where he instructed Cipolla to cover one side of the house while he, going along the other side, went to the back yard and saw a rear window to Iannarelli's tenement open; that on raising himself up to the window he heard a noise as if somebody was running through the tenement; that he immediately dropped to the ground and, dashing to the front of the house, he saw two men running down the porch steps thereof; and that he chased them for some distance and finally caught them in a dead-end street. Those men were the defendants Alfred Braica and Paul Calise.

After the captain had brought them to headquarters together with the third defendant William S. McCowan, whom detective Cipolla had chased and caught, he returned to the scene to get Calise's automobile which was parked in that vicinity and, on closer examination of the dead-end street, he picked up a flashlight that, according to the

34

captain, Calise admitted belonged to him. The flashlight was introduced in evidence without objection. Other than to testify that he saw three men running from the porch and that he ran after and caught McCowan, who was one of them, detective Cipolla's testimony with reference to what occurred at the Iannarelli tenement was substantially to the same effect.

An examination of the defendants at headquarters, shortly after their arrest and in the presence of Captain Stone, was stenographically reported and transcribed, which written statements the defendants refused to sign. Neither the statements nor the stenographic notes were used in any way by the state in the presentation of its case. However, Captain Stone testified over defendants' objection that he asked Braica "what he expected to get in the house" and that his answer was "Oh, what do you want me to say, what the * * *, you caught me." Calise's answer to a similar question was: "You caught us." Whether the questions just mentioned were asked by Captain Stone in the course of the above-mentioned examination of the defendants or independently thereof is not clear. The fact is that he testified of his own memory without the aid of memorandum of any kind. In addition to the alleged admissions just stated detective Cipolla testified that while he was taking McCowan down to the cell room, the latter told him that "he was the lookout man" at the time.

Calise was the only defendant to testify. His testimony in substance was that in company with Braica and McCowan he drove his automobile to River avenue sometime after 10 p.m. and parked it in the vicinity of the Iannarelli home; that he was looking for one Gerusso who lived in a house owned by a man named Jordano; that his purpose was to borrow some money from Gerusso and in turn lend it to McCowan, who had asked him, Calise, for a loan which he could not grant because he had no money; and that leaving McCowan in the automobile he and Braica started to look for Jordano and on inquiry from a passerby they were directed

to the Iannarelli house. He further testified that, after ringing the bell and receiving no answer, he started down the porch stairs, where he "tripped" over a piece of wood which had been placed there by painters; and that as he stumbled "some big man approached me with a gun in his hand and I got scared and I started to run." Calise admitted a conviction and sentence for larceny, but he denied making the admission attributed to him by Captain Stone.

_ It appears of record that the two attorneys who tried the case for the defense were associates in the practice of the law, at least to the extent of sharing common offices. Prior to the trial neither of them had filed an entry of appearance identifying his individual client. At the close of the cross-examination of the first witness for the state by one attorney the other also started to cross-examine that witness, whereupon the prosecutor objected on the ground that such procedure was in violation of the superior court rule which provides that the examination and cross-examination of a witness shall be conducted by one attorney only on each side. Although the objection was necessarily made in the presence of the jury, the question thus raised was fully discussed in its absence, the jury having been withdrawn at defendants' request. The result of such discussion was that the trial justice, accepting the assurances of the two attorneys that one appeared for Braica and Calise while the other represented McCowan, decided that both attorneys were entitled to cross-examine the state witnesses, which right they exercised fully throughout the trial.

The defendants, particularly McCowan, contend that such incident was prejudicial in that it tended to deprive them of the benefit of counsel. Our examination of the transcript discloses no exception to the ruling of the court or to any part of the proceedings in connection therewith. In such a situation the subject matter of an alleged exception, even though briefed and argued, will not be considered by this court. In any event, however, we cannot see how the defendants or any one of them could have been prejudiced

36

when they were granted and exercised the right of cross-examination at all times through both attorneys.

The principal exception to rulings on evidence urged by the defendants is directed to the refusal of the state to use the hereinbefore-described written statements, which the prosecutor, without disclosing the contents thereof, had mentioned in his opening to the jury. Their contention, as we understand it, is that in the circumstances the best evidence rule required the production of and reliance upon those statements by the state, and that in default thereof the testimony of Captain Stone and detective Cipolla respecting admissions by the defendants was inadmissible. Defendants further contend that they were prejudiced and deprived of a fair trial because the prosecutor had failed to produce and offer in evidence the written statements which he mentioned in his opening to the jury. We dismiss the latter contention without further discussion as in our judgment such failure of proof might well have prejudiced the state but not the defendants.

Whether or not the admissions in question were made in connection with defendants' examination resulting in the written statements is of no consequence as such statements were in no way used by the state. Here we are not dealing with a confession or a written document. Nor is any claim made that the admissions testified to by Captain Stone and detective Cipolla were the result of improper conduct on the part of those officers or anyone else in authority. Furthermore, there was no request by defendants that the state produce the written statements for their inspection so that they might determine for themselves whether such statements were inconsistent with the testimony of the officers and thus impeach their credibility.

Captain Stone and detective Cipolla were not questioned as to what the written statements contained and no reference thereto was made by them in their testimony. The officers testified of their own memory as to what the defendants told them, regardless of whether those facts were reduced to

writing as an extrajudicial record. In such circumstances it is generally held that both the oral and the written statements are equally primary evidence. 22 C.J.S. Criminal Law, §730, p. 1246; 1 Wharton's Crim. Evid. (11th ed.), §409. Other than directing attention to *People* v. *Ramos*, 3 Cal. 2d 269, where a contention similar to the one under consideration was considered and rejected, we see no need for further citation of cases on a rule of evidence which is supported by the overwhelming weight of authority. The exception under consideration is therefore overruled.

Defendants' exceptions to the denial of their motions for a directed verdict and for a new trial are without merit. The facts in evidence clearly required the trial justice to submit the case for determination by a jury and their verdict, which was affirmed by the trial justice, is amply supported by the evidence. These exceptions are overruled. The other exceptions not briefed or argued are deemed to be waived.

All of the defendants' exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*William E. Powers*, Attorney General, *Raymond J. Pettine,* special counsel, for State.

*Peter W. McKiernan,* for defendants Alfred Braica and Paul Calise.

*Charles A. Kiernan,* for defendant William S. McCowan.