STATE *vs.* JOSEPH H. BRUNI *et al.*

APRIL 25, 1952.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

CONDON, J. This is an indictment for robbery on which five defendants were tried together in the superior court and found guilty by a jury. The case is here on a single bill of exceptions in which all defendants joined. However, one defendant, Peter A. Greco, with leave of this court has withdrawn his exceptions, thus leaving only four defendants prosecuting the bill here.

The bill sets out forty-four exceptions, forty-one of which are to rulings of the trial justice either admitting or excluding evidence objected to by the defendants. The others are exceptions to the denial of their motion for a mistrial, to the denial of their motion for a new trial, and to a portion of the trial justice's charge to the jury.

It appears from the evidence that on May 1, 1950 sometime between two-thirty and three o'clock in the morning Mrs. Jeanette M. Fortin, hereinafter referred to as the complaining witness, was set upon in a lonely spot near Oakwood avenue in the city of Providence and robbed of a watch, a pair of earrings, a necklace and a small sum of money, namely, a five-dollar bill and a silver dollar. The next day, May 2, 1950, at the central police station in Providence she was confronted with each of the defendants and identified each one as having participated in the robbery. Also on that day at the station in the presence of complaining witness and a policewoman, Josephine E. Reardon, each

defendant in the presence of the other defendants admitted his part in the crime in answer to questions addressed to him by Captain Paul A. King of the Providence police department. The statement of each defendant on that occasion was taken down and transcribed by a police stenographer. Later each defendant except Gabriel P. Maioli signed such statement. Maioli refused to sign because he claimed one part of his statement was not correctly transcribed.

The state did not offer those written statements in evidence nor did it refer to them in interrogating officer Reardon. On the contrary it strictly confined its interrogation to what the witness actually heard each defendant say in answer to certain questions addressed to him by Captain King concerning his conduct and presence at the scene of the robbery on the morning in question. No attempt was made to have the witness testify as to the contents of any written statement, signed or unsigned, by any of the defendants. Reference to such written statements was first made by counsel for defendants while examining a witness for the state in the absence of the jury. Nevertheless the defendants repeatedly objected to the testimony of officer Reardon and they are pressing those objections here under their exceptions numbered 7 to 38 inclusive.

They contend that the best evidence of what they said in answer to Captain King's questions was contained in the written statements which the state had in its possession. They also argued that it was incumbent upon the state to introduce such statements in evidence and that it was not excused from such duty by the trial justice's offer to require the state to produce them upon defendants' demand therefor. In other words, they claim that officer Reardon's testimony as to what they said was secondary evidence and therefore clearly inadmissible. We cannot agree with such contention. In the circumstances her testimony was as much primary evidence of what they said as the transcribed

report of the stenographic notes. And we recently so held in *State* v. *Braica,* 78 R. I. 32.

However, defendants argue that the facts therein were different and therefore such case cannot control the ruling in the instant case. We do not think so. In the *Braica* case there were also statements in writing transcribed from stenographic notes of what defendants had said but neither the statements nor the notes were used by the state in presenting its case. The officers who had heard the defendants answer the questions were allowed to testify, solely from their recollection without the aid of a memorandum of any kind as to what they actually heard defendants say, but not, however, as to the contents of the written statements.

In the case at bar officer Reardon had precisely the same opportunity to know what the defendants said and was allowed to testify in like manner. Aside from the fact that the written statements in the *Braica* case were unsigned and that four of the statements in the case at bar were signed, there is no essential difference between the two cases. As pointed out in the *Braica* case, the testimony was admitted in acordance with the generally accepted rule governing the admission of such evidence, and therefore the trial justice was correct in following the same rule in the case at bar. Exceptions numbered 7 to 38 are therefore overruled.

The complaining witness in her direct examination describing what happened at the scene of the robbery testified that four men, with handkerchiefs tied around their faces leaving only their eyes uncovered, appeared at the scene where the automobile in which she was sitting was parked and pulled the driver out of the car. Later in her cross-examination she testified that she became afraid when one of the defendants, afterwards identified as Maioli, came to the side of the car; that she then "thought it was a robbery," or that it "was a holdup"; and that she was "scared twice on top of what I was scared before." Defendants objected to the above-quoted portions of her testimony

on the ground that it was opinion evidence and therefore inadmissible. There was no error in allowing such testimony. In the circumstances already testified to by her it was not so much a conclusion as it was testimony of her state of mind in the sudden presence of these masked men and was, therefore, admissible. Exception numbered 2 to this testimony is overruled.

In presenting its case in chief the state offered in evidence a necklace, a pair of earrings, and a wrist watch which a police officer had taken from defendant Maioli's home as a result of information which he had given to Captain King at the police station. In the course of her direct examination the complaining witness identified each of those articles as the same which said defendant had forcibly taken from her at the scene of the robbery. She also identified each of them on cross-examination respectively by counsel for defendants Maioli, Bruni, and Marrocco. However, when Marrocco's counsel began his cross-examination he asked: "Mrs. Fortin, can you describe your jewelry to the jury?" On the state's objection the question was excluded. Obviously the most that it could elicit would be a simple answer "yes" or "no."

After the objection had been sustained he was nevertheless permitted to cross-examine her further at some length as to her ability to identify and her identification of each article, thus further testing her credibility in this respect. In our opinion, assuming that it was error to exclude the above question, it did not prejudice defendants since the ruling did not substantially deprive them of the right of reasonable cross-examination but merely limited its scope, because counsel was permitted in subsequent questions reasonably to test her credibility in that respect. Moreover the articles were specifically identified by the police officer who had taken them from defendant Maioli's home on orders from Captain King and were admitted without objection as exhibits. In the circumstances the trial justice's ruling

excluding the question was not reversible error and defendants' exception 3 thereto is overruled.

It does not appear that defendants' other exceptions numbered 1, 5, 6, 40, 41 and 42 to the admission or exclusion of evidence have been briefed nor have they been specifically argued. In such circumstances they are ordinarily deemed to be waived. In any event we have considered such exceptions and in the absence of any reasons in support of them they appear to be without merit and are overruled.

On cross-examination by counsel for defendant Bruni the complaining witness was asked a series of questions purporting to elicit from her testimony that in a telephone conversation she had asked a member of defendant's family for money. The witness flatly denied such suggestion and at the conclusion of her cross-examination asked the trial justice if she could say something further concerning the subject of money. The trial justice replied: "Well, not now." He added that the attorney general if he cared to do so could bring it up in redirect. Immediately upon resuming her examination in redirect the attorney general asked the following question: "Mrs. Fortin, since this indictment was returned were you offered money by someone interested in the defendants?" Over the objection of defendants she was allowed to answer and testified: "Yes sir, I was." The defendants thereupon moved for a mistrial on the ground that the question impliedly contained a suggestion that counsel or someone else on behalf of the defendants had attempted to bribe the complaining witness and therefore such question was highly prejudicial to the defendants.

The trial justice denied the motion on the ground that defendants, having opened the door to this kind of evidence, could not complain if the state followed with further testimony of a like character in clarification of what had been hinted in cross-examination. We are clearly of the opinion that, in the circumstances, the trial justice's ruling was proper. The state certainly had the right not only to repel the suggestion that the complaining witness was blackmail-

ing defendants or any members of their families but also to show that she on her part had actually been approached with an offer of money, presumably to drop further prosecution. We think the defendants have no just cause to complain that in playing with fire they got burned. Their exception numbered 4 to the denial of their motion is overruled.

At the conclusion of the state's evidence defendants moved to dismiss the indictment on the ground that there was no evidence tending to prove the essential elements of the crime of robbery. This was in effect a motion for a directed verdict. The brief of one defendant so describes it. At the time it was made none of the defendants had expressly closed his case. In fact after the motion was denied defendant Maioli and his wife Helen Maioli, and Gilda Bruni, mother of defendant Bruni, testified for the defense; and counsel for the other defendants, while their clients did not testify, continued to participate in the actual conduct of the trial. In such a case defendants' motion, whether treated as one to dismiss the indictment or for a directed verdict, was addressed to the trial justice's discretion and his denial of the motion was, therefore, not subject to an exception. For this reason defendants' exception numbered 39 to such denial is overruled. Moreover, even though such exception was properly allowed it is nevertheless clearly without merit as, in our opinion, there was ample evidence tending to prove the essential elements of robbery. This will be made manifest hereinafter in our discussion of defendants' exception to the denial of their motion for a new trial.

The trial justice's charge was satisfactory to the defendants except in one respect. They objected to an isolated portion of it wherein, after calling to the attention of the jury certain testimony of Maioli and his wife pertaining to the ownership of the necklace, the earrings and the watch which were before the jury as exhibits and which the complaining witness had identified as hers, the trial justice

stated: "So, you have to take that testimony into consideration. You have to take the testimony of the policewoman who said she heard each one of these defendants, in the police station admit that they took this property, or took part in the taking away of the property and divided the money in some restaurant afterwards." The defendants would have us believe that the trial justice intended by that statement to convey to the jury the idea that they were obligated to accept policewoman Reardon's testimony as true. At least they contend that the import of his language was such that it misled the jury into that erroneous belief regardless of what the trial justice intended.

We cannot agree with that contention. Taken out of its context in the entire charge the statement may at first blush appear to submit to that interpretation, but when it is read as it should be with all that preceded it, it is clear beyond any doubt that the trial justice was using the expression "you have to take that testimony" in the sense of "you have to take into consideration the testimony" as is obvious in his earlier statements. In other words he was reminding the jury, and we think quite fairly, that they were not to find their verdict on any one segment of the evidence without considering other competent and relevant evidence, but that it was their duty to weigh and consider all the evidence and determine for themselves where the truth lay. We think the whole charge must have given the jury a clear concept of their duty in this respect rather than to have confused or misled them, as defendants argue. Since there was no error in the portion of the charge objected to, defendants' exception numbered 43 thereto is overruled.

The defendants' final exception numbered 44 is to the denial of their motion for a new trial. Such motion was based on the usual grounds but at the hearing thereon in the superior court defendants apparently relied on a single ground that the verdict was contrary to the evidence and the weight thereof. The trial justice emphatically rejected that contention. He went further and expressed his confi-

dence in the credibility of the complaining witness' story of the events leading up to the attack upon her and of what the participants therein did. Finally he declared that in his independent judgment there was ample evidence to support the guilt of each defendant. Under the well-established rule in this state, where the trial justice has thus correctly and unequivocally performed his duty in denying a motion for a new trial, this court will not disturb his decision unless it is clearly wrong.

We have carefully examined the transcript and we have found nothing therein which would warrant us in coming to that conclusion. On the contrary we find that the evidence quite fully supports the trial justice's view that the verdicts do substantial justice between the parties. Not only did the complaining witness' testimony satisfactorily establish the *corpus delicti* by proving that the crime of robbery had been committed and that all the defendants were principals therein, but the testimony of the defendants' free and voluntary admissions of their complicity in the crime corroborated the complaining witness and unmistakably hammered home the fact that they had all joined in the commission of the robbery and had actually shared in a division of some of the spoils.

It is true that defendant Maioli repudiated such admission and denied on the witness stand that he took anything from the complaining witness; and Helen Maioli, his wife, testified that the necklace and earrings which had been taken from her home by the police belonged to her. But this testimony went only to the weight of the evidence and was affected adversely by the credibility of the witnesses. Defendant Maioli was shown to have been previously convicted of breaking and entering and sentenced to a term of six months.

The credibility of these defense witnesses was peculiarly within the province of the trial justice and he appears to have rejected their testimony. On the whole record there seems to us to be ample justification for his judgment in

,that respect and for his decision in approving the verdict and denying a new trial. The defendants' exception thereto is overruled.

Some of the defendants have urged here that a certain remark made by the trial justice with reference to Mrs. Gilda Bruni, mother of defendant Bruni, while she was on the witness stand was prejudicial error. In the course of her examination after she had answered a number of questions in English she lapsed into her native tongue and the trial justice somewhat reluctantly allowed the use of an interpreter for the rest of her examination. At the time, however, he commented as follows: "She apparently doesn't want to talk English. Bring in the interpreter. If she has been here twenty-two years, she certainly ought to talk English well enough to be understood." The defendants objected to this remark and the objection was overruled. They then asked for an exception which was refused. No exception was taken to such refusal to allow an exception and no motion for a mistrial was made. There is no exception, therefore, to the ruling in the bill of exceptions.

Although the parties have briefed and argued the matter as though an exception had been noted there is in reality nothing before this court to review. In the rare instance where a trial justice refuses to allow an exception to alleged prejudicial comment by him in the presence of the jury the refusal should be treated as a ruling and an exception taken thereto. Such an exception would then be effective to bring up the whole matter for review. In the circumstances we do not pass formally upon the comment.

All of the defendants' exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*William E. Powers,* Atty. Gen., *Archie Smith,* Assistant Atty. Gen., for State.

*Leo P. McGowan,* for defendant Joseph H. Bruni.

*Charles A. Kiernan, Joseph Goodman,* for defendant Fred Ciampanelli.

*Joseph V. Ortoleva,* for defendant Joseph A. Marrocco.
*Angelo Cianciarulo, Uldrich Pettine,* for defendant Gabriel
P. Maioli.