SUMMERS, Justice.
 

 Thomas Joseph Hamilton is appealing from his conviction and sentence for manslaughter. The indictment of the grand jury of Calcasieu Parish charges that on January 23, 1965 he killed one Robert Leger “in sudden passion and heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.”
 

 
 *397
 
 In a ' jury trial held in October 1965 Hamilton sought to establish self-defense or accidental killing as justification, but he was found guilty as charged and sentenced to eight years at hard labor in the penitentiary. A number of bills of exceptions were reserved by Hamilton’s counsel.
 

 No substantial disagreement exists concerning the factual background of the case; and, as these facts bear upon a proper undérstanding of the bills of exceptions, we recite them briefly.
 

 The first event having a bearing on the killing occurred some six weeks to two months prior to January 23, 1965. At that time Hamilton and a woman named Alice Reeves were living together in an apartment in Lake Charles. She worked at the Early Times Cafe. One night after work three of the boys at the cafe, including the victim Robert Leger, went home with her to the apartment where she lived with Hamilton. While they were there, Hamilton returned home to find Leger and the Reeves woman together. He questioned Leger’s presence in the apartment, and Leger left.
 

 Some six weeks later, in the early morning hours of January 23, 1965, the date of the killing, Leger and Hamilton met at the Early Times. There was talk between them about the occasion when Hamilton found Leger at the apartment. This talk led to a fight in which Leger struck and bruised Hamilton, causing his eye to swell. In the words of the trial judge, Hamilton was “seriously beaten.” He returned to the apartment where Alice Reeves slept and either slapped her across the face or shoved her to awaken her and show her what Leger, her “old boy friend,” had done. While at the apartment, he summoned the city police who came, heard his story and observed the superficial injuries he had incurred. They advised him to file a charge in the morning. Incensed by the refusal of the police to take action against Leger, Hamilton proclaimed in the presence of Alice Reeves and the officer that he would take care of Leger himself. It seems, also, that he tried to obtain a gun but was unable to do so. Later that morning, as he and Alice Reeves were driving downtown, he espied Leger in front of the Early Times Cafe and left the car, over the Reeves woman’s protest, to confront Leger. As he left the car he pushed her aside, but she managed to immediately take the driver’s seat and attempted, without success, to run him down. The second fight ensued shortly thereafter, in which Leger met his death as a result of a wound in the heart inflicted by a knife wielded by Hamilton.
 

 The first bill relied upon was taken when Alice Reeves was testifying under examination by the district attorney. Following her testimony that she attempted to run over Hamilton because it “ran through her mind” that there might be trouble between him and Leger, she was asked if she did
 
 *399
 
 not think he was going to kill Leger. She answered that it “ran through her mind.” Defense counsel objected to the question and answer, contending that the question sought and the answer furnished an opinion of a witness not qualified as an expert which is contrary to R.S. 15:463. The court overruled the objection, and Bill of Exceptions No. 1 was reserved.
 

 In his per curiam the trial judge set forth that the evidence showed that just prior to the altercation in which Leger was killed Hamilton and Alice Reeves were driving down the street. When Hamilton saw Leger he pushed the Reeves woman against the side of the vehicle, and, over her protest, proceeded toward the victim. It is at this time, she testified, that she tried to stop him by running him down.
 

 The judge ruled that the district attorney’s question was designed to show her purpose in attempting to run down the defendant and that it was not intended to elicit opinion testimony. He ruled that the witness’ knowledge of events concerning the activities of Hamilton prior to the killing, together with the disclosure of her state of mind, induced by those events which led her to attempt to run him down as he approached Leger over her protest, were relevant to the issue of defendant’s intent.
 

 We think it is correct to say that the question elicited, and the answer furnished, testimony of Alice Reeves’ state of mind rather than opinion evidence. State v. Bruni,
 
 79
 
 R.I. 311, 88 A.2d 162 (1952). It was proper for her to testify to the reasons for her actions in attempting to run Hamilton down. State v. Marker, 237 Iowa 84, 20 N.W.2d 886 (1945), 23 C.J.S. Criminal Law § 871(2) c. There could be little doubt that the events leading up to this incident gave her ample grounds for thinking as she did, and this state of mind explains in some measure her actions. Related as this state of mind was to Hamilton’s actions, it was relevant to Hamilton’s intent and heat of blood. This first bill of exceptions is without merit.
 

 Bill of Exceptions No. 2
 

 Alice Reeves had been called on direct examination by the district attorney, who had a signed statement from her about certain facts of the case. The statement generally pertained to the difficulties between Hamilton and the deceased victim Leger. It made reference to Leger’s presence at the home of Alice Reeves, some six weeks prior to the killing, and to subsequent difficulties between Hamilton and the deceased.
 

 After the district attorney had asked the witness several questions, which were replied to with apparent hesitancy, it became evident to the judge that the witness was showing hostility toward the examiner. A question was then propounded relative to the manner in which Hamilton
 
 *401
 
 awakened the witness upon reaching their apartment shortly after he was seriously beaten by Leger on the morning of January 23. Instead of answering that he had awakened her by striking her in the face which is what the signed statement showed, she answered that he had shaken her.
 

 The district attorney then pled surprise and moved the court to have the witness declared hostile, in order that he might cross-examine and impeach her on the basis of a prior contradictory statement.
 

 The judge examined the written statement, ruled that the district attorney had been taken by surprise and further concluded from the witness’ demeanor that she was hostile. He permitted cross-examination for the purpose of impeachment.
 

 Defendant objected to the court’s ruling contending that there was no showing of surprise on any material point, that the nature of the relationship between the Reeves woman and Hamilton was not at issue, that and the testimony and the statement were not substantially at variance.
 

 Article 487 of the Code of Criminal Procedure provides that no one can impeach his own witness (1) unless he has been taken by surprise by the witness’ testimony, or (2) unless the witness shows hostility toward him.
 

 We think the impeachment permitted by the trial judge was proper on both grounds.
 

 The statement of the witness was contradictory in a very substantial and material respect, because the prior statement reflected that Hamilton struck the Reeves woman in the face to awaken her, but her testimony which surprised the district attorney was to the effect that he shook her to awaken her. Hamilton’s belligerent or nonbelligerent attitude at this time, following the beating he .had just received at the hands of Leger and the fact that the fight resulted from ill feelings between the two on account of attentions Leger had bestowed on the Reeves woman, was directly related to his subsequent intent, provocation and heat of blood, resulting in the stabbing and death of Leger. It may be true, as counsel contends, that the nature of the relationship between Hamilton and the Reeves woman was not at issue; but that relationship was nevertheless clearly relevant if it had any bearing upon the intent or heat of blood of Hamilton, which it did in this instance. R.S. 14:31 (1); R.S. 15:488.
 

 Furthermore, the trial judge in his per curiam found that after the district attorney had asked the witness several questions, “which were replied to with apparent hesitancy, it became evident that the witness was showing hostility toward the examiner.” Accordingly, the trial judge’s finding of hostility furnishes the second ground to support his ruling permitting the impeachment. State v. Willis, 241 La. 796,
 
 *403
 
 131 So.2d 792 (1961). Both elements of Article 487, surprise and hostility, were therefore' present; and we find Bill of Exceptions No. 2 to be without merit.
 

 Bill of Exceptions No. 3
 

 This bill is to some extent related to the previous bill, for it involved the cross-examination of the Reeves woman by the district attorney and his effort to show that Hamilton’s brusque attitude toward the Reeves woman was related to his ill feelings toward Leger. He sought to do this by asking her if Hamilton had not shoved her down steps some six weeks before the killing, when Hamilton found her and Leger in the apartment together. By showing this prior act of brutality, he -was attempting to show Hamilton’s disposition and the probability that he had in fact struck the Reeves woman on the morning of the killing as her written statement' showed, and had not just shaken her to awaken her as she testified at the trial.
 

 This question was objected to as being irrelevant and immaterial, and the objection was overruled. The trial court found the question would elicit relevant testimony, as all of the difficulties between these parties which related to Leger had a bearing upon Hamilton’s intent,, heat of blood and provocation. R.S. 14:31(1).
 

 When intent forms an essential part of the inquiry, testimony may be offered of .such acts or' conduct of the accused as tend to establish such intent. R.S. 15:446. Evidence of intent need not be proven as a fact, but may be inferred from the circumstances of the transaction. R.S. 15 :445. This evidence of intent was particularly pertinent in view of the fact that one of the defenses here was accidental killing. Bill of Exceptions No. 3 is without merit.
 

 Bills of Exceptions Nos. 4 and 5
 

 Counsel for the defense next objected to the introduction of a red shirt bearing blood stains, which belonged to the victim and which was worn by him at the time of the killing. In an effort to support the objection, defendant’s counsel argued that the identity of the victim was not in dispute, nor was there any dispute as to the killing of the deceased, and the introduction of the bloody shirt could serve no purpose save to inflame and prejudice the jury. A like objection was made to the introduction of a photograph of the deceased victim showing the body in such a position that the bloody wound was clearly visible. Both objections were overruled and Bills 4 and 5 were reserved.
 

 The victim’s bloodstained shirt and the photograph of his corpse were relevant to the burden imposed upon the State to establish the killing beyond a reasonable doubt. Both were illustrative of the manner in which the killing was accomplished and furnished proof of the identity of the victim. Defendant’s con
 
 *405
 
 céssion, in the course of the argument on the objections that the identity of the victim and the fact of the killing were not in dispute, did not relieve the State of the burden of establishing those facts beyond a reasonable doubt.
 

 The fact that objects or photographs constitute or portray a repulsive spectacle and tend to prejudice the jury furnishes no valid ground for their exclusion where they are otherwise relevant. State v. Ross, 217 La. 837, 47 So.2d 559 (1950); State v. Morgan, 211 La. 572, 30 So.2d 434 (1947). Such evidence is admissible if offered to furnish a description of the wound or to shed light on any issue. State v. Eubanks, 240 La. 552, 124 So.2d 543 (1960); 2 Wharton, Criminal Evidence § 686 (12th ed. 1955).
 

 State v. Morris, 245 La. 175, 157 So.2d 728 (1963), upon which the defendant relies, is an unusual case in which a series of photographic color slides showing the details of an autopsy were permitted to be introduced in evidence. We held there that the logical relevancy of the numerous color slides was unquestionably overwhelmed by their inherently prejudicial nature-circumstances which we do not find here. There was nothing overwhelmingly gruesome or prejudicial about the shirt or photograph in the case at bar; and there was no error in the ruling of the trial judge permitting their introduction in evidence.
 

 Bills of Exceptions Nos. ó and 7
 

 In the course of his examination of the witness Alice Reeves, the district attorney was permitted by the court to impeach her testimony and examine her as under cross-examination, because her answers were contrary to a prior written statement in his possession and because her demeanor on the witness stand demonstrated that she was a hostile witness. While this cross-examination was in progress, defendant’s counsel requested a copy of the written statement which was then in the district attorney’s office and could not be furnished without some delay. As it was then nearly 5 o’clock in the afternoon when the court usually adjourned for the night, the district attorney objected to furnishing the statement until the next day, and stated that he wanted to complete his examination of the witness before adjournment when defense counsel could “get to” the witness. In the interchange between counsel which followed, the district attorney explained, in effect, that there was no attempt to imply by the remark that defense counsel-would suborn the witness, as everyone knew it was perfectly proper for . attorneys to talk to witnesses. A motion for a mistrial was filed by the defense on the basis that the remark of the district attorney was highly prejudicial. A bill was reserved when the motion was denied, and another bill was reserved when the judge refused
 
 *407
 
 to compel the immediate production of the written statement.
 

 The judge stated in his per curiam that he denied the defense request in view of the impending adjournment of court and because it was evident defense counsel would be furnished a copy of the statement prior to his cross-examination of the witness the next day.
 
 [1]
 

 It was not an abuse of the trial judge’s discretion in the orderly conduct of trial proceedings, where the written statement was not readily available, to refuse to interrupt the crucial stage of the cross-examination of a hostile witness by the district attorney to require him to furnish defense counsel with the statement. Delay under these circumstances creates no prejudice to the defense, and, except for a general statement that prejudice resulted, counsel has set forth no fact, argument or authority to convince us that prejudice did occur. La.Code Crim.Proc. arts. 493, 557.
 

 Nor do we discern error in the trial judge’s ruling denying a mistrial because of the district attorney’s remark that he wanted to complete his examination of the Reeves woman before they could “get to her.” No authority has been furnished to support the position of the defense on this issue, and we have found none. Perhaps the choice of words by the district attorney was indelicate to some extent, and not in the tone of restraint which defense counsel would have preferred, but we do not find the statement to be improper; and the law does not hold contending counsel to the niceties of grammar or to the utmost propriety for remarks made in the heat of argument.
 

 Bill of Exceptions No. 8 was reserved to the court’s failure to grant a new trial for improper remarks made by the district attorney during the course of the closing argument. As the closing argument was not transcribed and attached to the bill of exceptions, the issue is not properly presented. La.Code Crim.Proc. art. 498, et seq.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . Subsequently the copy of the statement was furnished defense counsel prior to his cross-examination of the witness.