350 So.2d 611 (1977)
STATE of Louisiana
v.
Curtis SAWYER.
No. 59336.
Supreme Court of Louisiana.
September 19, 1977.
Rehearing Denied October 21, 1977.
*612 Antonio E. Papale, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Robert L. Simmons, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The Orleans Parish Grand Jury indicted defendant, Curtis Sawyer, for second degree murder. The jury returned a responsive verdict of manslaughter. The State charged defendant as an habitual offender under LSA-R.S. 15:529.1 based on three prior felony convictions. The lower court, finding defendant to be an habitual offender as charged, sentenced him to serve twenty-one years in the custody of the Department of Corrections, with credit for time served and to pay court costs. On appeal, defendant relies upon four assignments of error for reversal of his conviction and sentence. Alternatively, defendant prays for a remand to the lower court for resentencing as a second offender.
Following are the context facts revealed by the transcript:
About 10:30 p.m., on May 26, 1975, defendant was visiting his estranged wife, Sharon Sawyer, in her mother's third floor apartment in the Fisher Home Project in New Orleans. Mrs. Sawyer had been living with her mother for about five months since her separation from defendant.
During defendant's visit, he and Mrs. Sawyer began arguing about whether or not they would "go back together," and defendant "punched" Mrs. Sawyer.
Meanwhile, Daneel White, the victim, arrived on the premises. Jerry Dillon had driven White to the project to visit Mrs. Sawyer to discuss a misunderstanding. Dillon *613 remained outside on the ground level talking to two men, while White went upstairs to visit with Mrs. Sawyer. Shortly after White went upstairs, Dillon and the other men heard two shots and ran upstairs, finding White lying on the porch just outside the apartment. White had been shot in the head near the left eyebrow. Sawyer was standing near the victim with a revolver in his hand. The victim subsequently died of the gunshot wound.
At trial, Sawyer testified in his own defense, asserting that he had shot the victim in self-defense.

ASSIGNMENT OF ERROR NO. 1
Defendant alleges that the lower court erred in admitting into evidence a photograph, which was shown to the jury, depicting the victim's body. The photograph shows the bullet wound to the victim's head and what appears to be a tracheotomy on the neck. Defendant alleges that the photograph served only to inflame the jury to his prejudice. He reasons that, since neither the shooting nor the identity of the deceased was at issue, the photograph could have no evidentiary value.
We find that defendant's complaint is without merit. We have reviewed the questioned photograph and find that it is not gruesome. Although observable, the wounds are not open. The photograph portrays very little blood.
The determination of the proper use of photographs is within the sound discretion of the trial judge, who can determine whether they serve a proper place in the jury's enlightenment, and his ruling will not be disturbed unless the inflammatory effect clearly outweighs the probative value. State v. Barber, La., 271 So.2d 853 (1973); State v. Giles, 253 La. 533, 218 So.2d 585 (1969). In the case before us, the trial judge did not abuse his discretion. In his Per Curiam, the trial judge explains that the photograph was not a gory one; it showed the entry point of the bullet and showed the bullet wound was directly between the eyes, providing a basis for an inference that the gun was aimed directly and deliberately at the victim and not in hasty self-defense. This Court has held that photographs, even if gory, are admissible if they shed light on any issue. State v. Frezal, 278 So.2d 64 (La.1973); State v. Hamilton, 249 La. 392,187 So.2d 417 (1966); State v. Scott, 198 La. 162, 3 So.2d 545 (1941). In State v. Normand, La., 298 So.2d 823 (1974), in a similar situation, this Court held non-inflammatory photographs were admissible despite the fact that defendant did not dispute that she shot the victim or that the shots resulted in the decedent's death.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
During the State's questioning of defendant's wife, the State sought to elicit testimony that she had previously indicated to authorities that she did not wish to cooperate with them because she had been threatened. The defense objected to any testimony regarding the threat, and the objection was sustained by the trial court. The court instructed the jury to disregard the reference to the threat. The jury was then removed from the courtroom for further discussion of the issue by the trial judge and attorneys. Defense counsel moved for mistrial, which was denied. When the jury returned to the courtroom, the trial judge again instructed them to disregard the reference to the threat.
Defendant correctly argues that evidence of threats communicated to a witness by a person who has no connection with the defendant is irrelevant and inadmissible in a criminal prosecution. State v. Hillman, La., 298 So.2d 746 (1974). In the case before us, the identity of the person making the threat was not revealed. However, reference to the threat does not necessarily require a mistrial or reversal. In State v. Hillman, supra, the trial judge permitted a state's witness to testify that he had received threatening telephone calls from an unidentified person about eight days after the defendant's arrest. The defendant *614 objected to this testimony on the ground of relevancy. The objection was overruled. Defense counsel asked that the judge instruct the jury to disregard the testimony. When the request was denied, counsel reserved a bill of exception. On appeal, the State conceded that the remarks were irrelevant, but urged that the error committed was harmless under LSA-C.Cr.P. Art. 921. This Court found that the ruling of the trial court admitting the testimony was harmless error.
In the case before us, the trial judge sustained the objection and twice instructed the jury to disregard the reference to the threat. We conclude that the trial judge correctly overruled the motion for a mistrial.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant alleges that the trial court erred in denying his motion for a mistrial based upon statements made by the prosecutor to the jury during closing argument. Defendant alleges that these statements indicated the prosecutor's personal opinions regarding the credibility of certain witnesses, among them the defendant, and indicated the prosecutor's personal belief in defendant's guilt.
It is impermissible for a prosecutor to abandon his argument on the evidence and express his personal opinion as to the guilt of the defendant. Thus, in State v. Kaufman, La., 304 So.2d 300 (1974), this Court held it was error for the prosecutor to emphasize to the jury that he would not be prosecuting if he did not think he had a case. However, the prosecutor's expression of views is ordinarily non-reversible if it is apparent that his views are either expressly or impliedly based on the evidence rather than on personal knowledge of facts outside the record. LSA-C.Cr.P. Art. 774; State v. Kaufman, supra.
In his Per Curiam, the trial judge concludes that the prosecutor's arguments were based on the evidence produced at the trial. We agree.
Each of the contested statements is associated with an analysis of the evidence.[1] When the arguments are examined in context, it is clear that they are based on the evidence, lack of evidence, or conclusions of fact that may be drawn. LSA-C.Cr.P. Art. 774. Hence, we find no merit in this argument.
The defendant also complains of the prosecutor's reference in argument to the defendant's prior convictions.
After the defendant took the stand as a witness in his own behalf, the State *615 was allowed to show that he had four prior convictions.
Article 770 of the Louisiana Code of Criminal Procedure provides for a mistrial on motion of defendant when the prosecutor refers to another crime committed by the defendant "as to which evidence is not admissible." That article, of course, is inapplicable here, because the evidence of the prior convictions were properly admitted in evidence.
The defense, however, complains of the emotional appeal based on the prior convictions. When the argument is viewed as a whole, as must be done, we conclude that it does not go beyond the parameters of permissible comment on the evidence.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Here, defendant alleges that the trial court erred in denying his post-trial Motion to Quash a bill of information charging him as a fourth offender pursuant to the provisions of the Louisiana Habitual Offender Law, LSA-R.S. 15:529.1. He based his motion on the fact that two of the prior offenses, although felonies at the time he was convicted, were by legislative enactment subsequently reduced to misdemeanors. Thus, he argues that he should be sentenced as a second offender rather than as a fourth offender.
Defendant's argument is without merit. The status of the offenses are determined as of the time of the conviction. We have previously resolved this issue adversely to defendant's position. State v. Broussard, 213 La. 338, 34 So.2d 883 (1948); State v. Ambrose, 212 La. 1062, 34 So.2d 261 (1948).
Assignment of Error No. 4 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs in part and dissents in part with reasons.
CALOGERO, J., concurs as to the conviction, but dissents from that part of the opinion which affirms the sentence imposed for a fourth felony offender. He should have been sentenced as a second felony offender.
DIXON, Justice (concurring and dissenting).
I concur in the majority opinion, except that I respectfully dissent from the treatment of Assignment of Error No. 4.
Cases relied upon by the majority, State v. Broussard, 213 La. 338, 34 So.2d 883 (1948) and State v. Ambrose, 212 La. 1062, 34 So.2d 261 (1948), both arose after the adoption of the Louisiana Criminal Code. There was a "general saving clause statute," Act 35 of 1932, which provided that the repeal of any criminal statute, required by the adoption of the criminal code, would not have the effect of releasing or extinguishing any criminal penalty, unless the repealing act expressly provided.
Such is not the case in the matter before us. In the absence of statutory material demonstrating a legislative intent to the contrary, we can only conclude that the habitual offender statute is designed to enhance the penalty for offenses committed by one who has committed previous offenses, which are felonies at the time of the enhancement of the penalty.
In my opinion, the defendant may be sentenced as a second offender, but not as a fourth offender.
NOTES
[1] Examples are:

"Now, after Terry Jordan, the fifteen year old saw this, she ran into the kitchen. Now, one thing out of all the witnesses that the State introduced, I ask that you pay particular to Terry Jordan. She is fifteen or sixteen years old. At any time she testified the defendant's attorney had a right to cross examine every witness that we put up here. Was there any problem was it ever shown that she was wrong in something? Are we going to believe that there was a massive conspiracy on the part of Terry Jordan? The mother? All these people have come here to lie and convict that man? That's what they want us to believe. And, as part of that conspiracy they are willing to say that a fifteen year old girl that's hard to believe. That one that witness alone I believe on that witness alone." (Emphasis supplied.) Tr. 11.
". . . [H]e's standing this close and he decides to fire directly at him. If he's this close with the gun, then the victim could have just grabbed his hand. He's lying when he tells us that. But, he doesn't fire one shot with that gun. But, this man, five eight, one hundred forty seven pounds just keeps on coming. And, so what he to do? He has to put that pistol right between his eyes and pull the trigger that's the only way I can stop him . . he couldn't run away, but, I know if I shoot him he'd probably stop coming." (Emphasis supplied.) Tr. 16.
"Now, defense attorney says that Sharon was intoxicated. I don't agree to that I don't buy that. She had been drinking and she admitted it. But, look at all the series of events which occurred afterwards which the defendant himself talked about. Does that appeal to you the way an intoxicated person would act? Carry on a conversation that's not the way a person who was so intoxicated she clearly didn't see what was going on." (Emphasis supplied.) Tr. 20.