362 So.2d 1095 (1978)
STATE of Louisiana
v.
Charles UNGER, III.
No. 61655.
Supreme Court of Louisiana.
September 5, 1978.
Rehearing Denied October 5, 1978.
*1097 Clyde D. Merritt, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Charles Unger, III was indicted for the first degree murder of Anthony Pillittere (R.S. 14:30). After a jury trial, defendant was found guilty as charged. The jury recommended life imprisonment without benefit of parole, probation or suspension of *1098 sentence, and the judge sentenced him accordingly. On appeal defendant relies upon eight arguments on assignments of error for reversal of his conviction and sentence.

Assignment of Error No. 2
Defendant contends the trial court erred in ruling that testimony of a State witness regarding a statement made by the victim prior to his death was a dying declaration or part of the res gestae, and therefore admissible as an exception to the hearsay rule.
Leroy Shields, a security supervisor at Delgado Junior College in New Orleans, testified that at approximately 11:30 p. m. on May 21, 1977 he received a walkie-talkie transmission from Anthony Pillittere, a security guard at the college. According to Shields, Pillittere stated, "Come back by Building 8. I have been stabbed and am bleeding to death." After summoning help, Shields rushed to Pillittere's aid, finding the victim lying on his back in a driveway next to the campus building. Pillittere said only, "Help me." Shields then noticed the defendant, who had been shot, lying on the ground a short distance away, with a knife beside him. The evidence at trial revealed that the victim was dead before the ambulance arrived a short time later. Pillittere had been stabbed twice in the back, the wounds penetrating his right lung and entering a major vein which goes through the heart.
Dying declarations are admissible if made when the declarant is fully conscious of his condition and under a sense of impending death after having abandoned all hope or expectation of recovery. C. McCormick, Handbook of the Law of Evidence, § 282 (2d Ed. 1972); 2 Wharton's Criminal Evidence, §§ 315, 321 (13th Ed. 1972); State v. Vincent, La., 338 So.2d 1376 (1976). If the declarant believed in his impending death at the time he made the declaration, it does not matter that thereafter he believed he would recover, or entertained a momentary hope. Wharton, supra, § 322; State v. Newport, 178 La. 459, 151 So. 770 (1933).
Defendant contends that the victim's subsequent statement of "help me" was contradictory to the belief that death was upon him and evidenced only an admission that the victim believed his condition to be serious rather than fatal. See Comment, 22 La.L.Rev. 651, 655-56 (1962). Therefore, he argues, the prior statement should have been excluded.
The victim's request for help upon Shield's arrival did not show such hope of recovery as to belie his prior statement that he believed his death to be near and certain. The seriousness of Pillittere's condition and the short time between his injury and death further support a conclusion that the victim believed his death was imminent.
The trial judge properly allowed in the statement as a dying declaration.

Assignment of Error No. 3
Defendant alleges that the trial court erred in refusing to order the State to disclose the contents of an oral inculpatory statement defendant made to police officers while at Charity Hospital.
The trial judge sustained defendant's motion to suppress the statement presumably on the basis that it was not freely and voluntarily made because at the time defendant was sedated and in pain. Defendant argues that he needed to know the contents of the statement in order to determine whether or not to testify in his own defense. His concern appears to be that the State still had the option to use the suppressed statement for impeachment purposes as a prior inconsistent statement.
Recently in State v. McGraw and Manchester (1978) (No. 61172), we held that the State, in offering an inculpatory statement for impeachment purposes, must establish beyond a reasonable doubt that the statement was freely and voluntarily given before it is introduced, just as is required for introduction of the statement in the case in chief. In light of the trial judge's ruling suppressing the statement, it appears that the State would have been unable to satisfy the requisite showing. Defendant, *1099 therefore, presents a fallacious argument for production of the statement. In addition, the trial judge determined that the statement contained no exculpatory material; under Brady v. Maryland (373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)), therefore, the State had no obligation to produce the statement. There was no error in the trial judge's action.[1]

Assignment of Error No. 5
By this assignment defendant contends that the trial judge improperly denied his motion to quash the indictment for first degree murder. Defendant's motion alleged that the district attorney's answer to bill of particulars revealed that the prosecution possessed no evidence of aggravating circumstances, as enumerated in C.Cr.P. 905.4, which would allow a jury to consider imposition of the death penalty in a capital case. Therefore, he averred he should have been indicted for a lesser included offense rather than for first degree murder.
We find no merit in defendant's contention. First degree murder is defined as "the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." R.S. 14:30. The provisions of C.Cr.P. 905 et seq., added by La.Acts 1976, No. 694, § 1, only involve the circumstances which must be taken into account in determining the appropriate sentence for a defendant convicted of first degree murder, i. e. either death or life imprisonment. A jury imposing a sentence of death must find beyond a reasonable doubt that at least one statutory aggravating circumstance exists. C.Cr.P. 905.3, 905.4. Thus, consideration of aggravating circumstances only affects the sentencing stage of the bifurcated proceeding in capital cases. It does not apply to the definition of the crime or to the nature of the proof necessary to show that defendant committed the substantive offense of first degree murder. There was no error committed in overruling defendant's motion to quash.
Defendant further alleges that C.Cr.P. 905.4 is unconstitutionally vague and overbroad. Article 905.4(g) lists as an aggravating circumstance which the jury may consider in determining whether to impose the death penalty that "the offense was committed in an especially heinous, atrocious or cruel manner." He argues that subsection (g) requires a subjective determination of the relative cruelty of the offense and fails to provide the jury with a constitutional standard. However, the jury recommended that defendant be sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. Hence, defendant was not prejudiced by the jury determination made under the statutory scheme. This assignment is without merit.

Assignment of Error No. 6
Defendant complains that the trial court erroneously overruled his motion to quash the indictment on grounds that the jury commissioner used names for the central jury pool drawn exclusively from a list supplied by the registrar of voters. This, defendant asserted, was in direct contravention to an en banc order of the Criminal District Court for the Parish of Orleans requiring the jury commission to use voter registration rolls as the basic source of prospective jurors supplemented by nonvoting residents from other sources. Therefore, he alleges, he was denied his constitutional right to be tried by a representative cross section of the community.
While defendant's argument is not a frivolous one, it does not require reversal of his conviction. As we stated in State v. Lawrence, La., 351 So.2d 493, 495 (1977):
"In State v. Daigle, 344 So.2d 1380, 1390 (La.1977), we expressed our concern over the propriety of using voter registration lists as the single source from which the *1100 jury venire is compiled. We held, however, that `. . .we cannot say that the use of voter lists without any showing in the record of any discrimination against a class of people establishes that the jury pool did not represent a fair cross-section of the community.'"
Although the defendant claims in brief that the procedure followed by the jury commissioner in the instant case resulted in an inadequate representation of eighteen to twenty-one year olds and minorities, defendant failed to make the requisite showing of a systematic exclusion. Therefore, we find no merit in this assignment.

Assignments of Error Nos. 7 and 8
Defendant contends the trial judge erred in sustaining the State's challenges for cause of eight prospective jurors due to their sentiments regarding the death penalty.
A review of the voir dire examination reveals that all eight prospective jurors stated in advance of trial that they could not consider returning a verdict of death. Therefore, the jurors were properly excused in compliance with C.Cr.P. 798(2) and Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). See State v. Drew, La. 360 So.2d 500 (1978); State v. Mitchell, La., 356 So.2d 974 (1978); State v. Sheppard, La., 350 So.2d 615 (1977); State v. Ross, La., 343 So.2d 722 (1977).
Defendant argues that Witherspoon has no application under our current first degree murder statute, R.S. 14:30, as amended, and the sentencing provisions of C.Cr.P. 905 et seq., wherein the death penalty is no longer mandatory upon conviction. He reasons that a juror's conviction against the imposition of the death penalty under any circumstances comes within the definition of "any other relevant mitigating circumstance," listed under C.Cr.P. 905.5 as a mitigating circumstance that the jury must consider in determining whether or not to recommend the death penalty or life imprisonment. This argument is unmeritorious. The "other relevant mitigating circumstances" are those related to the offender, and not to the moral convictions and sentiments of the juror, as defendant contends. As stated in C.Cr.P. 905.2, "the sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender."
We find no merit in these assignments.

Assignments of Error Nos. 11 and 15
Defendant urges by these assignments that the trial judge erred in allowing in evidence two black and white photographs of the body of the victim, and in permitting the jury to keep them in its possession during the two and one-half hours of deliberation. He alleges that the photographs were prejudicial, gruesome and lacking in probative value. The two photographs depict the victim, lying on his back on the blood spattered grass, bleeding from a knife wound.
It is well settled that the test of admissibility of allegedly gruesome photographs is whether their probative value outweighs their potential prejudicial effect on the jury. State v. Matthews, La., 354 So.2d 552, 557 (1978), and cases cited therein. Further, the trial judge's ruling on the use of such photographs will not be disturbed unless the inflammatory effect clearly outweighs the probative value. State v. Sawyer, La., 350 So.2d 611 (1977).
While the photographs herein are not pleasant pictures, they are not gruesome. Moreover, the photographs clearly were admissible to corroborate expert testimony as to the manner in which the death occurred and the cause of death. State v. Beach, La., 320 So.2d 142 (1975).
In sum, we conclude that the probative value was not outweighed by the potential prejudicial effect the photographs had on the jury and the trial judge did not err in admitting them.

Assignment of Error No. 14
Defendant contends that the trial judge committed reversible error by making an impermissible comment on the evidence *1101 during the court's charge to the jury, in violation of C.Cr.P. 772 and 806.[2]
While charging the jury on the possible verdicts that could be returned in the case, the judge explained the various definitions of manslaughter, and concluded with:
"The third situation we are presently discussing is when a homicide occurs when the offender is resisting lawful arrest, this situation is not concerned in the present case." (Emphasis added).
Defendant argues that since a private citizen can effectuate a lawful arrest if a felony is being perpetrated in his presence, Mr. Pillittere could have been engaged in a citizen's arrest of the defendant when the homicide occurred.
Defendant's objection was that the judge impermissibly commented on the evidence in violation of C.Cr.P. 772 and 806. Under different circumstances it might have been, but here it was only a parenthetical remark concerning the judge's (legal) reason for not giving a portion of the definition of the crime of manslaughter. "The court shall charge the jury: (1) As to the law applicable to the case." C.Cr.P. 802. It is important to note that defendant did not request the instruction concerning manslaughter while resisting arrest, and the record before us does not disclose that it was ever an issue or contention before the jury. Considered in the context of the case, the judge's comment was not a comment on the evidence.[3]
For the reasons assigned, defendant's conviction and sentence are affirmed.
NOTES
[1] It should also be noted that C.Cr.P. 716(C), as amended, which would have required the court, on defendant's motion, to order the district attorney to inform defendant of the substance of the oral statement, did not go into effect until the day after the jury returned its guilty verdict.
[2] C.Cr.P. 772 provides:

"The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
C.Cr.P. 806 provides:
"The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
[3] In defendant's Assignment of Error No. 17 he requests the court to examine the record for errors patent on its face. After having reviewed the record, we find no such patent errors.