449 So.2d 1321 (1984)
STATE of Louisiana
v.
Willie WATSON, Jr.
No. 81-KA-2227.
Supreme Court of Louisiana.
February 27, 1984.
*1324 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Morel, Jr., Dist. Atty., Abbott J. Reeves, Kurt F. Sins, Gregory Champagne, Asst. Dist. Attys., for plaintiff-appellee.
Victor E. Bradley, Jr., Norco, John L. Diasselliss, III, LePlece, for defendant-appellant.
WATSON, Justice.[*]
This is Willie Watson, Jr.'s second appeal from a death sentence for the slaying of Kathy Newman. After the first appeal, his first degree murder conviction was affirmed, the death sentence reversed because of improper jury instructions, and the case remanded for a new sentencing proceeding. State v. Watson, 423 So.2d 1130 (La.,1982). On remand, the state and the defense joined in a change of venue motion and the hearing was transferred to Vermilion Parish. Watson was again sentenced to death in accordance with the new jury's recommendation. In this appeal, Watson relies on fourteen assignments of error, consolidated into nine arguments, for reversal of his death sentence.

FACTS
On April 5, 1981, Willie Watson abducted Kathy Newman, a third year Tulane medical student, at gunpoint from the parking lot of her apartment complex in the Carrollton section of New Orleans. Defendant forced Ms. Newman to drive to an isolated road in St. Charles Parish where he robbed her and raped her vaginally and anally. Watson then told Kathy Newman to dress herself. As she stood outside her car putting on her clothes, Watson shot her fatally in the back of the head. Defendant subsequently confessed to the killing and stated that he shot her because he was afraid she could identify him.
ASSIGNMENTS OF PROCEDURAL ERROR AFFECTING SENTENCE: ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the trial court erred in granting a state motion in limine *1325 to exclude the testimony of Father Lundy or any expert in the field of Christian morality.
At the sentencing hearing in defendant's first trial, Father Lundy, a Roman Catholic priest, qualified as an expert in Christian theology. Citing Biblical sources, he testified that the death penalty is an impermissible punishment under any circumstances. Two other Roman Catholic priests testified in rebuttal that their church is not opposed to the death penalty.
In her written reasons for excluding the expert testimony here, the trial judge stated: "Philosophical and moral considerations are not issues for the jury ... It is irrelevant to the jury's decision whether one person or one group believes that capital punishment should not be in the statutes or should not be an available sentence to any case." (Tr., Vol. 1, p. 30)
Defendant argues that that testimony was admissible because LSA-C.Cr.P. art. 905.5(h) provides that the jury shall consider "[a]ny other relevant mitigating circumstance", and the court has no right to limit the evidence of mitigating circumstance.
Relevancy of proffered evidence depends on whether it tends to prove or disprove a material fact at issue. LSA-R.S. 15:435. A trial court is vested with wide discretion in determining the relevancy of evidence and its ruling will not be disturbed in the absence of an abuse of discretion. State v. Kimble, 407 So.2d 693 (La.,1981).
LSA-C.Cr.P. art. 905.2 defines material issues at a sentencing hearing. "The sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender." To accomplish this, the jury considers evidence of aggravating and mitigating circumstances to determine whether a particular defendant should receive a death sentence for the particular crime committed.
In State v. Unger, 362 So.2d 1095 (La.1978) defendant argued that reversible error occurred when the trial court sustained state challenges to eight prospective jurors because they could not consider returning a verdict of death. Defendant argued that a juror's firm opposition to the death penalty was a relevant mitigating circumstance under LSA-C.Cr.P. art. 905.5(h). Unger held that "`other relevant mitigating circumstances' are those related to the offender, and not to the moral convictions and sentiments of the juror." 362 So.2d 1095 at 1100. The reasoning of Unger is controlling here. Louisiana's capital punishment scheme is constitutional. An individual's opinion that the death penalty has no place in the criminal justice system is irrelevant to a sentencing jury's deliberations. Mitigating circumstances must be offender-focused.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER TWO AND FIVE
Defendant argues that the trial judge erred in admitting photographs of the victim and allowing them to be viewed by the jury. Further error allegedly occurred when the prosecutor was permitted to wave these photographs before the jury.
State exhibits numbers one, two and three are photographs from different angles of the victim's body as it was found by the police. Exhibit number four is a photo of the victim's hand showing a ring removed from the middle finger. Exhibit number five is a crime scene close-up of the victim's face. Exhibits numbers six and nine are victim photos taken at the morgue. Exhibits eight and nine are close-ups of the bloody entry and exit bullet wounds to her head. All the photographs were admitted in evidence at the guilt phase of Watson's trial.
The core of the defense argument is that this sentencing hearing was heard by a different jury and only evidence relevant to aggravating or mitigating circumstances was admissible. LSA-C.Cr.P. art. 905.2 states that "[t]he jury may consider any evidence offered at the trial on the issue of guilt." Defendant argues that the word *1326 "may" means admission is not automatic. He maintains that the probative value of these pictures was outweighed by their prejudicial effect, and, since the defense offered to stipulate to the facts of the crime, they were not necessary for their probative value.
LSA-C.Cr.P. art. 905.2 allows the sentencing jury to "consider any evidence offered at the trial on the issue of guilt." The state may introduce into evidence at the sentencing hearing all the previous testimony, physical evidence, and stipulations that were entered in the case-in-chief at the guilt phase of the proceedings. State v. Jordan, 420 So.2d 420 (La., 1982); State v. Monroe, 397 So.2d 1258 (La., 1981); State v. Kelly, 375 So.2d 1344 (La., 1979). Photographs of the victim are probative of the "circumstances of the offense" which is by law the focus of the sentencing hearing. LSA-C.Cr.P. art. 905.2; State v. Monroe, supra. The governing statutes do not distinguish this situation where two different juries pass on the issues of guilt and penalty.
Under Louisiana Supreme Court Rule XXVIII, mandated by LSA-C.Cr.P. art. 905.1, all capital sentences must be reviewed to determine whether they were influenced by passion, prejudice or other arbitrary factors. The pictures must be tested under this standard.
Post-mortem photographs of a murder victim are admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death, and to provide positive identification. State v. Lindsey, 404 So.2d 466 (La., 1981); State v. Brogdon, 426 So.2d 158 (La., 1983). The admission of gruesome photographs will not be overturned unless it is clear that their prejudicial effect outweighs their probative value. An offered stipulation bears upon this balancing test, but the decision is primarily one for the trial court. State v. Lindsey, supra; State v. Bodley, 394 So.2d 584 (La., 1981). The state cannot be robbed of the moral force of its case merely because the stipulation is offered. State v. Harvey, 358 So.2d 1224 (La., 1978).
The photographs are not unduly prejudicial. None are so gruesome as to "overwhelm reason" to associate the accused with the atrocity without sufficient evidence. State v. Lindsey, 404 So.2d at 476. The record does not establish that the state waved the photographs before the jury to arouse passion or prejudice.
These assignments lack merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that the trial court erred in admitting his confession into evidence without a proper foundation.
At the hearing, Sergeant Ronald Doucette testified that he had personally read Watson his Miranda rights, was present when defendant signed a rights of arrestee form, and was the officer who took Watson's statement. After Doucette's testimony, the state offered defendant's confession into evidence and it was admitted. In overruling defendant's objection, the trial court stated that the voluntariness of the confession had already been decided at the guilt phase of the trial.
This assignment is "palpably without merit." State v. Monroe, 397 So.2d 1258 at 1273 (La., 1981). LSA-C.Cr.P. art. 905.2 clearly permits the sentencing jury to "consider any evidence offered at the trial on the issue of guilt." State v. Jordan, 420 So.2d 420 (La., 1982).
Defendant's argument that evidence presented to a different sentencing jury has to be treated without regard to its introduction ab initio lacks merit. LSA-C. Cr.P. arts. 905.1 and 905.2 do not make this distinction.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant assigns as error the trial court's failure to give four special jury *1327 charges.[1] The charges requested by Watson are as follows:
"4.
"By law, a jury may not consider the imposition of the death penalty unless and until the jury finds, unanimously and beyond a reasonable doubt, that at least one of the aggravating circumstances set forth above exists. The aggravating circumstances which the law permits you to consider if you find that any of them is established by the evidence are:
"a) The offender was engaged in the perpetration of aggravated rape and armed robbery; and
"b) The offender has a significant prior history of criminal activity.
"These are the only aggravating circumstances you may consider. You are not allowed to take into account any other facts or circumstances as the basis for deciding that the death penalty would be an appropriate punishment in this case.
"14.
"There is noting (sic) that prevents you from affording Willie Watson mercy in thise (sic) proceedings by sentencing him to life imprisonment without benefit of probation, parole, or suspension of sentence regardless of the evidence presented to you and even if you have not found the existence of any mitigating circumstances."
"16.
"If upon the evidence in this phase of the proceeding you have any doubt as to the appropriate sentence, then you must return a verdict sentencing Willie Watson to life imprisonment without benefit of probation, parole, or suspension of sentence."
The trial court ruled that all three charges were not wholly correct statements of the law and were otherwise included in the general charges.
LSA-C.Cr.P. art. 807 provides in pertinent part that "[a] requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given." The requested special charges were properly excluded. State v. Lovett, 359 So.2d 163 (La., 1978); State v. Rault, 445 So.2d 1203 (La., 1984).
Special charge number four erroneously includes a statement that the jury was "not allowed to take into account any other facts or circumstances as the basis for deciding that the death penalty would be an appropriate punishment in this case." LSA-C.Cr.P. art. 905.3 mandates that the jury consider both aggravating and mitigating circumstances prior to any death penalty recommendation. Also, special charge number four was included in the trial court's general charge.[2]
Special charge number fourteen is also generally covered in the trial court's jury charges. The jury was instructed that it was free, even in the absence of mitigating *1328 evidence, to return a verdict of life imprisonment. (Tr., Vol. 7, p. 270)
The use of the word "doubt" in special charge number sixteen would require judicial explanation or clarification and the charge was properly excluded.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER SIX AND SEVEN
By these assignments, defendant complains that the trial court erred in admitting the hearsay testimony of Officer Doucette, and failing to grant a mistrial when the officer made a statement regarding the commission of another crime.
Sergeant Doucette, an investigating officer in the Kathy Newman murder, testified about the facts and circumstances surrounding his investigation. During the course of his testimony he stated that the victim's roommate told him of Ms. Newman's activities on the night of her murder. A defense hearsay objection was overruled. Doucette recounted the course of the investigation, including the circumstance of and the substance of Watson's confession. Doucette said other officers executed a search warrant at defendant's residence, where Ms. Josie Massey, Watson's common law wife, refused to answer questions because "she feared her life for Mr. Watson." (Tr., Vol. 6, p. 103) Defense counsel moved for a mistrial, alleging that Doucette, an officer of the court, referred in hearsay testimony to another crime committed or alleged to have been committed by defendant as to which evidence was not admissible. The trial court denied the motion for mistrial but did admonish the jury to disregard Ms. Massey's remark.
Hearsay evidence is testimony in court of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La., 1978). A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for the credibility of its contents. State v. Ford, 368 So.2d 1074 (La., 1979); State v. Edwards, 406 So.2d 1331 (La., 1981), cert. denied 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467. A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer. State v. Calloway, 324 So.2d 801 (La., 1976); State v. Smith, 400 So.2d 587 (La., 1981); State v. Edwards, supra. Much of officer Doucette's testimony was admitted to explain the sequence of events leading to defendant's arrest. His testimony concerning statements made by the victim's roommate is not hearsay.
LSA-C.Cr.P. art. 770 provides: "Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;..."
A police officer is not a court official within the meaning of Article 770. State v. Foote, 379 So.2d 1058 (La., 1980); State v. Carter, 412 So.2d 540 (La., 1982); State v. Hayes, 414 So.2d 717 (La., 1982). The statement in question did not actually refer to another crime despite a possible inference to that effect. The jury was admonished to disregard the remark and this was sufficient to assure the defendant a fair trial. LSA-C. Cr.P. art. 771.
These assignments lack merit.

ASSIGNMENTS OF ERROR NUMBER EIGHT AND TEN
Defendant argues that the trial judge erred in admitting evidence not relevant *1329 to aggravating or mitigating circumstances. Also, defendant contends the trial judge erred in allowing the testimony of Detective Burns concerning fingerprints on the victim's car and in admitting into evidence the victim's raincoat with blood on it.
In its case-in-chief, the state offered much of the same testimony and physical evidence presented during the guilt phase of Watson's trial. The physical evidence included certain articles of clothing found on the victim's body. Detective Burns, qualified as an expert witness in the field of latent fingerprint identification, explained through the use of enlarged pictures how a latent print from Kathy Newman's car was matched to a known fingerprint from Watson. All of this evidence was properly admitted at the guilt phase of trial.
Defendant argues that this evidence was irrelevant in the sentencing proceeding, and LSA-C.Cr.P. art. 905.2 requires that the sentencing hearing "shall be conducted according to the rules of evidence." One rule of evidence set out in LSA-R.S. 15:435, states that "the evidence must be relevant to the material issue." Watson contends the only material issues at a sentencing hearing involve the aggravating and mitigating circumstances.
Defendant's arguments disregard the language of LSA-C.Cr.P. art. 905.2 which requires that "[t]he sentencing hearing shall focus on the circumstances of the offense." This jury, which did not decide the issue of guilt, had to be provided with an accurate picture of the events surrounding Watson's first degree murder conviction to fulfill their responsibility of deciding an appropriate punishment.
These assignments lack merit.

ASSIGNMENTS OF ERROR NUMBER NINE AND FOURTEEN
Defendant argues that the trial court erred in restricting his voir dire questioning and allowing the state extraneous voir dire examination. Defendant claims the state was given greater latitude than the defense in its Witherspoon questioning. Defendant contends he was prejudiced and was unable to choose a fair and impartial jury and to properly build challenges for cause.
In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) the United States Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." On the other hand, the court found no constitutional bar to excluding jurors who stated in advance of trial that they could not even consider returning a verdict of death.
In response to Witherspoon, LSA-C. Cr.P. art. 798 was amended and now provides in pertinent part:
"It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
* * * * * *
"(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, ..."
In viewing the voir dire examination in its entirety, no prejudice to defendant is shown. At defendant's request, much of the voir dire was conducted individually. Defendant conducted extensive voir dire and was able to intelligently exercise his right to challenge prospective jurors for cause.
During questioning of Ms. Bessie Moore, she indicated in response to court questioning that she would automatically vote against the death penalty under all circumstances. Defense counsel, in attempting to rehabilitate her, asked if she could listen to the evidence before making a decision and she said she could. Because of her contradictory *1330 responses, the judge asked her directly if she could ever vote for the death penalty. She responded in the negative. Defense counsel objected arguing that the exact language of LSA-C.Cr.P. art. 798 must be employed to properly comply with Witherspoon. In overruling the objection, the court noted that the prospective juror had given a negative answer to a question posed in the specific language of Article 798.
During defense questioning of Ms. Bellaire, the trial court interjected to comment that a defense question was misleading because counsel implied that the juror was being asked how she would vote. Defendant objected arguing that such judicial comment could be viewed as commenting on the evidence. Objections, he argued, should come from the state or not at all.
The defense is entitled to wide latitude in examining prospective jurors. This right must be exercised within the court's discretion, which determines the scope of the examination under the prevailing facts and circumstances. State v. James, 431 So.2d 399 (La., 1983); State v. Robinson, 404 So.2d 907 (La., 1981). Here, the trial court did not curtail defense questioning but interjected a comment about the misleading nature of a question. The argument that only the state is capable of objecting to defense voir dire questioning is meritless.
When both sides had concluded their questioning of prospective juror Hebert, the trial court asked one more question to ascertain the juror's position: "If it is established that Kathy Newman was murdered, that she was raped twice and that she was also robbed, could you consider imposing the death penalty?" (Tr., Vol III, p. 457) Ms. Hebert answered, "I can't be sure of that." After the court explained that she was not asking how Ms. Hebert would vote, but rather whether she could consider the death penalty, Ms. Hebert stated: "I don't think I could." The state moved to excuse Ms. Hebert for cause and the defense objected, arguing that this juror had never said that she would automatically vote against the death penalty.[3]
In allowing the state challenge for cause, the trial court held that Ms. Hebert's unwillingness to consider imposition of the death penalty was firm, relying on Williams v. Maggio, 679 F.2d 381 (5th Cir., 1982).
The Fifth Circuit in Williams declared:
"Witherspoon and its progeny do not mandate that a prospective juror aver that she would refuse to consider the death penalty in every case that could possible (sic) arise. If she knows enough about the case to know that she could not consider imposition of the death penalty regardless of what evidence might be presented, she must be excused. Ms. Brou's responses demonstrate that she would be unwilling to consider the death penalty where the crime charged was murder committed during a robbery. She does leave open the possibility that she would consider this penalty in a more `hideous' case. Her unwillingness to do so here, however, is firm." 679 F.2d at 385-386.
The rationale of Williams had previously been adopted by this court. State v. LaFleur, 398 So.2d 1074 (La., 1981) involved the aggravating circumstance that the crime was committed in an atrocious, cruel or heinous manner. During voir dire, prospective jurors were asked whether they could return the death penalty if they were convinced beyond a reasonable doubt that the crime was committed in such a manner. LaFleur held: "This is a legitimate question inasmuch as a juror who could not *1331 recommend the death penalty under such circumstances is subject to a challenge for cause by the state." 398 So.2d at 1078.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER ELEVEN
Defendant argues that the trial court erred in refusing to qualify Willie Jackson as an expert on the effects and use of "tees and blues",[4] thereby prejudicing his defense.
Before any witness can give evidence as an expert his competency must be established to the satisfaction of the court. LSA-R.S. 15:466. Competency of an expert witness is a question of fact within the sound discretion of the trial judge. State v. Coleman, 406 So.2d 563 (La., 1981). A trial judge's rulings on qualifications of experts will not be disturbed in the absence of manifest error. State v. Stucke, 419 So.2d 939 (La., 1982); State v. Trosclair, 443 So.2d 1098 (La., 1983).
Mr. Jackson testified that he attended but never graduated from Southern University in New Orleans where he majored in psychology and minored in drug abuse. He has no background or formal training in any field of medicine and is currently employed at a V.A. Hospital as a rehabilitation counselor. While Mr. Jackson admitted that he is a former addict, he did not say that he ever used the drugs in question. He had attended numerous lectures and seminars, conducted workshops, and wrote papers on drug abuse, including the abuse of "tees and blues". Mr. Jackson had never qualified as an expert witness on the effects of "tees and blues" in any court.
The trial court's ruling denying Mr. Jackson expert witness status was not manifestly erroneous in view of Mr. Jackson's lack of expertise.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER THIRTEEN[5]
Defendant argues that the trial judge erred in instructing the jury that they were not to be influenced by sympathy.
The trial judge instructed the jury as follows:
"You are not to be influenced by sympathy, passion, prejudice or public opinion. You are expected to reach a just verdict." (Tr., Vol. VII, p. 274)
Watson argues that this instruction lessened the impact of and ordered the jury to disregard the mitigating circumstances. Defendant cites the Georgia Supreme Court opinion in Legare v. State, 250 Ga. 875, 302 S.E.2d 351 (1983) where a similar charge was given.[6] The Georgia Supreme Court found an irreconcilable conflict between the charge eliminating sympathy and the charge on mitigating circumstances. Legare concluded: "Because the charge complained of might well confuse the jury and limit their constitutional required consideration of evidence in mitigation, we hereby disapprove it." 302 S.E.2d at 354. Since in Legare there was reversible error in a prior argument, the court did not reach the state argument that, viewing the charges as a whole, the jury members could not have been misled by the challenged charge.
The state argues here that the given charge was not improper. Had the jury members been told that they could be influenced *1332 by sympathy, they would logically have sympathy for the victim, not the defendant.[7]
The charges as a whole did not inflict prejudice or any arbitrary factor into these sentencing proceedings. The trial court fully enumerated the statutory mitigating circumstances and stressed that the jury must consider any other relevant mitigating circumstances, not being limited to those defined. Importantly, the jury was charged that:
"Although you may unanimously agree beyond a reasonable doubt that at least one statutory aggravating circumstance exists, you may still conclude that the overall circumstances are insufficient to warrant death, and you would be free, even in the absence of any evidence in mitigation, to return a verdict of life imprisonment without benefit of parole, probation, or suspension of sentence." (Tr., Vol. VII, p. 270)
This particular sentence made clear to the jury that they were free to consider any aspect of the case in arriving at their verdict. The challenged charge did not confuse the jury in its deliberations.
This assignment of error is without merit.

CAPITAL SENTENCE REVIEW
LSA-C.Cr.P. art. 905.9.1 (Louisiana Supreme Court Rule XXVIII) requires each death sentence be reviewed to determine if it is constitutionally excessive. The following three factors must be considered:
(a) Whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors;
(b) Whether the evidence supports the jury's finding of a statutory aggravating circumstance; and
(c) Whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
A Uniform Capital Sentence Report with attached pre-sentence investigation report has been submitted by the trial court. The report indicates that Willie Watson, Jr., a black male, was twenty-four years old at the time of the crime. He is unmarried with no children or dependents. Watson was born of a common law union when his mother was a teenager. Until his early teens he grew up in a rural area under the supervision of a friend of his mother. When this woman died, defendant was taken against his will by his natural mother to New Orleans where he lived in the projects. Defendant has a low normal I.Q., left school after the seventh grade, and has a minimal employment record. Most of his adult years were spent in the custody of the Department of Corrections. Defendant has been involved with drugs since the age of thirteen.
PASSION, PREJUDICE AND ARBITRARY FACTORS
The sentence was not imposed under the influence of passion, prejudice or any other arbitrary factors.
While defendant is black and his victim white, race was not an issue at trial. Local passion was eliminated when the venue was changed from St. Charles Parish, the site of the crime and first trial, to Vermilion Parish.
The victim's photographs, defendant's confession, and other evidence admitted initially at the guilt portion of defendant's trial, did not interject prejudice or arbitrary factors in this jury's deliberations. The jury instructions were proper statements of the law.
AGGRAVATING CIRCUMSTANCES
The jury in its verdict found the following statutory aggravating circumstances:
(a) The defendant was engaged in the perpetration or attempted perpetration of aggravated rape;

*1333 (b) The defendant was engaged in the perpetration or attempted perpetration of armed robbery; and
(c) The offender had a significant prior history of criminal activity.
The evidence presented at the sentencing hearing is clearly sufficient to support the jury's findings with respect to the commission of aggravated rape and armed robbery. Defendant's confession along with his testimony at the sentencing hearing established that he raped Kathy Newman both vaginally and anally. Testimony by the pathologist and medical technologist support Watson's confession. Defendant also testified that he robbed Ms. Newman at gunpoint of her purse, money, and jewelry during the course of the murder.
The third aggravating circumstance, a significant prior history of criminal activity, is also substantiated by the record. Watson has three prior convictions for simple burglary, a conviction of possession of a firearm by a convicted felon, and an extensive juvenile record. Defendant testified as to his extensive use of marijuana, heroin, and "tees and blues".
The jury findings with respect to all three aggravating circumstances are supported by the record.
PROPORTIONALITY OF SENTENCING
The final aspect of sentence review requires a determination of whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. An inference of arbitrariness arises when a jury's recommendation is inconsistent with sentences imposed in similar cases in the same jurisdiction.
Defendant's contention that the proportionality of the sentence cannot be determined in this case because there were no similar first degree murder cases in Vermilion Parish is without merit. According to statistics provided by the district attorney for the Twenty-Ninth Judicial District, there have been a total of nine first degree murder prosecutions within the Fifteenth Judicial District, which includes Vermilion, Acadia and Lafayette Parishes.
State v. Aucoin, 362 So.2d 503 (La., 1978) involved the prosecution of a mother for the murder of her eight year old daughter. The killing was done by strangulation, beating, stabbing, and ultimately by driving a car over the child. The mother was found guilty of first degree murder and the jury recommended life imprisonment. In mitigation, the defense argued her mental disease and drug addiction.
State v. Francis, 403 So.2d 680 (La., 1981) involved the prosecution of a man who pulled a gun and began shooting when he saw a former girlfriend dancing with another man. A security guard and the dancing partner were killed. This defendant was found guilty of two counts of first degree murder with the jury recommending a life sentence.
In State v. Thibodeaux, 383 So.2d 1264 (La., 1980) defendant shot four times, killing his victim after the two argued over a pool game. Thibodeaux received a life sentence following his first degree murder conviction.
State v. Narcisse, 426 So.2d 118 (La., 1983) involved a prosecution for a brutal and fatal stabbing of defendant's seventy-four year old great aunt during an armed robbery. The jury found defendant guilty of first degree murder and recommended the death sentence.
In State v. Celestine, 443 So.2d 1091 (La., 1983) defendant received a sentence of death for the rape and murder of an elderly woman in her home.
State v. Thibeaux, 366 So.2d 1314 (La., 1978) involved the prosecution of a thirty-nine year old mother of four for the shooting death of her husband. At trial defendant claimed self-defense and the state offered no aggravating circumstances. She was found guilty of first degree murder and sentenced to life. This court reversed the conviction and defendant has not been retried.
Two cases presently on appeal to this court, State v. John F. Fuller, Docket No. *1334 83-KA-0619 and State v. Jimmy Glass, Docket No. 83-KA-1735, both involve brutal murders committed during the course of armed robberies. In both cases, the juries returned death recommendations.
The Aucoin, Thibeaux, Francis and Thibodeaux juries recommended life imprisonment. In each case there was mitigating evidence persuasive to the jury. Fuller, Narcisse, Glass and Celestine all involved murders perpetrated upon elderly victims in their homes. Rape or armed robbery was an aggravating circumstance in each case. These cases involved cold-blooded murder with no clear mitigating circumstances involved, the same situation as presented here.
In mitigation, Watson argues that at the time of the offense he lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law because of his drug addiction. Although the defendant was a heavy user of "tees and blues", it was not established that he was incapable of knowing right from wrong at the time of the crime.
Defendant did not act in the heat of passion. He fully admitted that after twice raping Ms. Newman, he shot her, not in anger, but because she would be able to identify him.
Considering the crime and the defendant, the sentence is not disproportionate.

DECREE
For the foregoing reasons, the death sentence of defendant, Willie Watson, Jr., is affirmed.
AFFIRMED.
DIXON, C.J., concurs, disagreeing with the treatment of hearsay in Assignments of Error number six and seven.
NOTES
[*] Judge Denis A. Barry participated in this decision for Lemmon, J., recused.
[1] "In his brief, Watson waives argument as to special charge number six which states: `Beyond the aggravating circumstances set forth above, you may not rely on any other factor or circumstances as a basis for deciding in favor of the death penalty. You are not to be influenced by any passion, prejudice, or any other arbitrary factor.'" This charge contains an incorrect statement of the law, and in any event, the subject matter was fully and correctly covered in the general charge.
[2] "You are required to consider the existence of aggravating and mitigating circumstances in deciding which sentence should be imposed. The statutory aggravating circumstances which the State has relied on are that the offender has a significant prior history of criminal activity; that the offender was engaged in the commission of aggravated rape; and that the offender was engaged in the commission of armed robbery. * * * Before you may consider that a sentence of death should be imposed, you must unanimously find beyond a reasonable doubt that at least one statutory aggravating circumstance exists. The State has the burden of proving this. Reasonable doubtThe State has the burden of proving this beyond a reasonable doubt." (Tr., Vol. 7, pp. 264-266).
[3] Extensive questioning of this juror had elicited contradictory statements on the ultimate question. She stated that her tendency would be to block out the death penalty and to consider life from the beginning. She answered in the affirmative when asked if she had any moral compunction against capital punishment. However, when the prosecutor asked her if she were saying that there were no circumstances under which she would consider imposing the death sentence, she stated: "It would be a very rare one, `cause none comes to mind at all." (Tr., Vol. III, p. 451)
[4] "Tees and blues" is a street expression for the drugs Talwin and Pyribenzamine when taken together.
[5] Assignment of Error Number Twelve assigns as error any and all errors patent on the face of the record. There are no errors patent on the face of the record.
[6] The Legare charge read as follows:

"`[T]he law does not permit Jurors in arriving at their verdict to be governed by sympathy or prejudice. You may not and should not, therefore, render a verdict in this case upon sympathy for either party or prejudice against either party. Any verdict you return must be supported by evidence produced upon the trial, or inferences which could be reasonably drawn therefrom without in any way being affected by either sympathy or prejudice.'"
[7] See State v. Williams, 410 So.2d 217 (La., 1982) which approved a charge cautioning the jury against letting sympathy for the victim influence its verdict.