Sterling RAULT, Sr., Petitioner-Appellant,

v.

Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary, Respondent-Appellee.

No. 87–3604.

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1987.

Stay Denied and Certiorari Denied Aug. 21, 1987.
See 108 S.Ct. 14.

Dwight Doskey, Orleans Indigent Defender Program, New Orleans, La., for petitioner-appellant.

Michael E. McMahon, Asst. Dist. Atty., New Orleans, La., for respondent-appellee.

Before CLARK, Chief Judge, GARWOOD and JONES, Circuit Judges.

BY THE COURT:

IT IS ORDERED that petitioner-appellant is GRANTED leave to proceed *in forma pauperis.*

IT IS FURTHER ORDERED that petitioner-appellant's application for certificate of probable cause is DENIED.

IT IS FURTHER ORDERED that petitioner-appellant's application for stay of execution pending appeal is DENIED.

We recite the prior history of this case, which is the third federal habeas petition of petitioner-appellant Sterling R. Rault, Sr. (Rault). Rault was convicted of first degree murder and sentenced to death in Louisiana courts in October 1982. On direct appeal, the Louisiana Supreme Court affirmed his conviction and sentence. *State v. Rault,* 445 So.2d 1203 (La.1984), 483 So.2d 141 (concurring opinion of Dennis, J.). The United States Supreme Court denied Rault's petition for *certiorari. Rault v. Louisiana,* 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984). Rault then filed an application for post-conviction relief in the Louisiana trial court. That court, following an evidentiary hearing, made findings adverse to Rault and denied his requested relief. Rault then applied for habeas corpus relief in the Louisiana Supreme Court, which unanimously denied his application without opinion in May 1985. Rault thereafter, on May 14, 1985, filed for relief under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Louisiana. That court denied relief and also denied Rault's application for certificate of probable cause to appeal. Rault sought a certificate of probable cause from this Court, which we denied, at the same time dismissing his attempted appeal. *Rault v. State of Louisiana,* 772 F.2d 117 (5th Cir.1985). On petition for rehearing, we adhered to our prior decision denying the application for certificate of probable cause and dismissing the appeal, but granted a stay of execution to remain in effect until the United States Supreme Court acted on Rault's petition for *certiorari* (provided he filed same by November 1, 1985), and if such writ was granted, then until the final disposition of the case by the Supreme Court. *Rault v. State of Louisiana,* 774 F.2d 675 (5th Cir.1985). Rault filed a petition for *certiorari* which was denied by the United States Supreme Court on June 9, 1986. *Rault v. Louisiana,* —— U.S. ——, 106 S.Ct. 2905, 90 L.Ed.2d 991 (1986). Thereafter, Rault again sought post-conviction relief in the Louisiana trial court, which denied it, and subsequently in the Louisiana Supreme Court, which unanimously denied relief on September 11, 1986 with the notation, "Denied. We find no merit in relator's application." Rault then, on September 12, 1986, filed his second habeas corpus petition under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Louisiana. That court denied relief, and on Rault's attempted appeal to this Court, we denied his application for certificate of probable cause. *Rault v. Blackburn,* 799 F.2d 1071 (5th Cir.1986). On May 4, 1987, the Supreme Court denied Rault's petition for *certiorari,* —— U.S. ——, 107 S.Ct. 1987, 95 L.Ed.2d 826 (1987), and on June 22, 1987, denied his motion for rehearing. —— U.S. ——, 107 S.Ct. 3245, 97 L.Ed.2d 750 (1987).

On July 20, 1987, Rault's execution date was fixed for July 24, 1987. On July 22, 1987, in response to writs sought by Rault, the Louisiana Supreme Court ordered that Rault's execution date be refixed for a date between thirty and forty-five days following the order so fixing the date of execution. *See* LSA–R.S. 15:567. Pursuant to this order, the Louisiana trial court, on July 23, 1987, fixed Rault's execution date for August 24, 1987 (*i.e.,* any time between 11:59 p.m. August 23, 1987 and 3:00 a.m. August 24, 1987). Thereafter, Rault again unsuccessfully sought post-conviction relief in the Louisiana trial court and habeas corpus in the Louisiana Supreme Court. Rault then, on August 12, 1987, brought this, his third petition for habeas corpus under 28 U.S.C. § 2254, in the United States District Court for the Eastern District of Louisiana. That court, by orders entered August 13, 1987, denied relief, denied stay of execution, and denied certificate for probable cause. 28 U.S.C. § 2253. Rault seeks to appeal to this Court, and requests us to issue a stay of execution and a certificate of probable cause. We decline this relief.

■ In passing on Rault's application for certificate of probable cause, we are guided by the standard "that a certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). *See also Fabian v. Reed,* 714 F.2d 39 (5th Cir.1983). In passing on the request for stay of execution, we apply the standard stated in *O'Bryan v. McKaskle,* 729 F.2d 991, 993 (5th Cir.1984). We hold that Rault has failed to make the required showing for either a certificate of probable cause or a stay.

In his trial and on his direct appeal, Rault, of course, was represented by counsel, and he has also been represented by counsel in all of his subsequent state and

federal habeas corpus and post-conviction relief applications, and is so represented in the present proceedings before this Court, as he was in the court below. Rault's present counsel has represented him in all his federal habeas proceedings and in all his Louisiana post-conviction and habeas proceedings. This same counsel also represented him on direct appeal, though he was represented by different counsel at and before trial.

In this his third federal habeas application, Rault alleges three grounds for relief, described in his supporting memorandum of law filed in the district court below and in his application to this Court for certificate of probable cause, as follows:

"I. ... [T]he denial of petitioner's right to testify under both hypnosis and in a conscious state, and the denial of the right to present tapes of the hypnotic sessions deprived the petitioner of his Sixth Amendment right to testify, his Sixth Amendment right to present a defense, and his Louisiana Constitutional rights to the same.

"II. ... [T]he denial of petitioner's right to testify under both hypnosis and in a conscious state, and the denial of the right to present tapes of the hypnotic sessions deprived the petitioner of his Eighth Amendment right to have the jury consider all relevant mitigating circumstances.

"III. ... [T]he use of an element of the crime (La.R.S. 14:30(1)) as the only aggravating circumstance truly supported by the evidence renders the death penalty in this case an arbitrary and capricious act violative of Eighth Amendment guarantees."

### Claims I and II

■ We consider the first two claims together as they relate to the same subject matter.[1]

---

**1.** We note preliminarily that Rault's first claim contains a reference to Rault's *"Louisiana* Constitutional rights" (emphasis added). However, that has not been briefed, here or below. Moreover, the Louisiana Supreme Court, the ultimate arbiter of such claims, has rejected it. Finally,

such a claim does not state a ground for relief under 28 U.S.C. § 2254. We also observe that Rault's first and second claims arguably refer to the denial of the right to testify "in a conscious state." However, they have not been briefed on that basis, here or below. Moreover, we have

As detailed in the opinion of the Louisiana Supreme Court on Rault's direct appeal and in our prior opinion on Rault's first federal habeas application, at his trial Rault's counsel "filed a motion to allow Rault to give testimony under hypnosis by Dr. Steck as *demonstrative evidence* of his mental condition and as a predicate for evaluating the basis of Dr. Steck's testimony" that Rault was, in effect, insane at the time of the offense. 772 F.2d at 128 (emphasis added). Dr. Steck, a psychiatrist retained by the defense, as well as Bachemin, an investigator trained in hypnosis and retained by the defense, had interviewed Rault under hypnosis prior to trial, and had taped the interviews. Rault's trial counsel likewise attempted to introduce the tapes of the interviews while under hypnosis for the same purpose, but the trial court would not admit them. However, the trial court allowed both Bachemin and Dr. Steck to testify as to their hypnotism of Rault and his version given under hypnosis of the events leading to the victim's death. Dr. Steck was also permitted to give his opinion, in large part based on what Rault had said under hypnosis, as to Rault's insanity at the time of the offense. On direct appeal, the Louisiana Supreme Court rejected Rault's complaints in this regard holding that "[t]he trial court did not abuse its *discretion* in disallowing the tape recording and hypnosis demonstration, which were both cumulative and of questionable validity." 445 So.2d at 1208 (emphasis added).

Rault relies on the recent decision of the Supreme Court in *Rock v. Arkansas,* —— U.S. ——, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). We regard the *Rock* decision as being wholly inapplicable to this case. *Rock* involved a defendant who was initially unable to remember crucial circumstances of the offense charged. Because of this, prior to trial, she was hypnotized by a defense-retained expert, and as a result of the hypnosis was able to remember what had happened. At trial, she sought to testify to the events surrounding the charged

offense, but the trial court would not allow her to testify to anything that she had not remembered prior to being hypnotized, as reflected by the notes of her interview with the hypnotist before she was placed under hypnosis. It is important to note that in *Rock* the defendant was *not* going to testify *while* in a state of hypnosis, which is what Rault's counsel proposed having Rault do in this case. Here the defense proposed to have Dr. Steck hypnotize Rault in open court before the jury, and then have Rault testify while thus hypnotized. Obviously, testimony while in a state of hypnosis presents completely different considerations from testimony while in a normal state although having been previously hypnotized.

Moreover, in *Rock,* the defendant was unable to recall the events at issue, without the aid of hypnosis. Here, by contrast, Rault has consistently claimed that he was able to recall the events at issue, and that he had described them in detail to his counsel before trial. *Rault,* 772 F.2d at 123–24 & n. 11. *No* limitation was placed on Rault's right to testify at trial according to his then present recollection, again wholly unlike the situation in *Rock.* Nor was any limitation placed upon the testimony of Dr. Steck as to Rault's mental condition, nor upon the testimony of either Dr. Steck or Bachemin as to what Rault had said under hypnosis. Dr. Steck and Bachemin testified fully as to what Rault had stated under hypnosis, and Dr. Steck expressed his opinion based in large part thereon as to Rault's mental condition at the time of the offense in question. Rault was given full opportunity, at both the guilt or innocence stage and the sentencing stage, to present to the jury all relevant evidence about his mental condition, as well as about the events at issue. We further observe that the defense did not tender the tapes or the hypnotized testimony of Rault for the truth of the matter recited, but rather as demonstrative evidence of Rault's mental condition at the time of the offense. Finally,

already held that there was no such denial. *Rault,* 772 F.2d at 120, 123–33. While no good reason has been suggested to reexamine that

determination, and indeed we have not been requested to do so, we in any event remain convinced of its correctness.

*Rock* involved a *per se* rule of exclusion, while it is clear that in Rault's case the matter was treated as one of individualized discretion exercised in light of the particular circumstances. *See State v. Rault,* 445 So.2d at 1208. In sum, *Rock* does not provide any support for Rault's contentions.

■ The exclusion of the tapes and the refusal to allow, as demonstrative evidence, Rault's testimony *while* hypnotized did not deprive Rault of any right under the United States Constitution, as to either the guilt or innocence phase of the trial or the sentencing phase, and, further, such rulings were not, as the district court below expressly found, prejudicial to Rault at either phase. *Cf. Glass v. Butler,* 820 F.2d 112, 115–16 (5th Cir.), *stay of execution denied,* — U.S. —, 107 S.Ct. 3202, 96 L.Ed.2d 689 (1987).

■ We also observe that Rault's claim in this regard is inconsistent with his sworn testimony at the March 1985 state habeas proceeding, which likewise formed the basis for his initial federal habeas claims. At that March 1985 hearing, Rault, far from claiming he could not remember what happened on the evening in question, testified in great detail as to those events, most of his testimony in this respect occupying pages 173 to 213 of the transcript of that hearing. In this testimony, Rault essentially repeated (albeit with a few relatively minor variations) the "Good Samaritan" story, the second, unhypnotized story which he had told his lawyers prior to his trial. He testified at the March 1985 state habeas hearing that the detailed description of the events he gave on that occasion was the truth and was what he had told his lawyers prior to trial, and was what had come to be called the "Good Samaritan" story. Rault has consistently maintained under oath, and sought post-conviction relief from the Louisiana courts and the federal courts, on the basis that he *did* (before trial, at trial, and subsequent to trial) *remember* what happened throughout the day and evening of the offense and his subsequent apprehension and was able to relate it, all without any hypnosis. He

should not now, at the last moment and after two unsuccessful federal habeas petitions, be able to repudiate these solemn representations. We further point out in this connection that Rault's initial federal habeas was *not* denied on the theory that Rault could not remember what happened on the evening in question. Indeed, it has *never* been determined that Rault could not remember the events at issue. Rather, Rault's first federal habeas was denied because, *whether or not* he could recall what happened during the offense, the state post-conviction court's implied fact-findings, that Rault consented to his counsel's strategy of using what Rault had said to Dr. Steck and Bachemin while hypnotized as evidence of his insanity when the offense was committed, and that he was informed of his right to testify and of counsel's willingness to put him on the stand if he wished but that he did not desire to testify, were supported by more than adequate evidence, and because his counsel's choice of strategy in those circumstances was well within the range of reasonable professional judgment and in any event did not prejudice Rault.

■ Moreover, we believe that the presentation of these claims in this, Rault's third federal habeas, when they were not presented in either of the two earlier federal habeas petitions, constitutes an abuse of the writ under Rule 9(b) following 28 U.S.C. § 2254. Certainly these claims were known earlier, as they were presented to the Louisiana Supreme Court both on writs at the beginning of trial and on direct appeal. Rault in essence offers two excuses for not presenting the claims earlier. The first is that the *Rock* decision came down subsequent to his last federal habeas. While this is true, it is meaningless because *Rock* does not support the claims. Rault's second excuse is that the claims could not be presented until the courts had rejected his initial post-conviction claims that he was wrongfully denied the right to choose his own defense and testify and present the "Good Samaritan" story. There are at least two answers to this. First, we do not consider that Rule 9(b) authorizes the delib-

erate withholding of claims, even if they are to some extent inconsistent. In the second place, Rault's excuse in this respect affords no reason for omitting the present claims from Rault's second federal habeas, which was filed some three months after the United States Supreme Court denied *certiorari* respecting Rault's first federal habeas application. Accordingly, when Rault filed his second federal habeas, the claims which he asserts were inconsistent with those now advanced had already all been finally rejected, and no constraints in that regard prevented him from raising his present first two claims in his second federal habeas. We recognize that the court below did not expressly address Rule 9(b), nor did the State of Louisiana do so prior to the decision below, since the petition below was dismissed before the state had the opportunity to answer. However, in an answer filed by the state the day after the decision below, the state raised, *inter alia,* the defense of abuse of the writ.[2] Further, Rault below and before this Court had an opportunity to, and did, advance his asserted justifications for not previously raising these claims. We conclude that as a matter of law there is no conceivable justification for the total omission of these claims from Rault's prior federal habeas petitions, particularly his second, and that as a matter of law he has abused the writ. We further find as a matter of law that the interests of justice do not require alleviation of the bar of Rule 9(b). *See Berry v. Phelps,* 819 F.2d 511, 516 (5th Cir.), *stay of execution denied,* —— U.S. ——, 107 S.Ct. 3179, 96 L.Ed.2d 668 (1987); *Jones v. Estelle,* 722 F.2d 159 (5th Cir.1983).

In sum, considered on their merits, Rault's first two claims are wholly invalid, and present on their merits no basis whatever on which to issue a certificate of probable cause or a stay of execution. Further, the two claims are clearly barred as an abuse of the writ under Rule 9(b), and the interests of justice do not dictate an alleviation of that bar, and for this separate reason also no certificate of probable cause or

stay of execution are appropriate respecting either of these claims.

### Claim III

In his third claim, Rault complains of the use as a statutory aggravating circumstance for sentencing purposes of an element of the crime of which he was convicted at the guilt or innocence stage. In this regard, he seeks to raise one of the issues on which the United States Supreme Court recently granted *certiorari* in *Lowenfield v. Phelps,* 817 F.2d 285, 288–89 (5th Cir.), *cert. granted,* —— U.S. ——, 107 S.Ct. 3227, 97 L.Ed.2d 734 (1987).

Rault was convicted of first degree murder. At the time of the offense, LSA–R.S. 14:30 provided as follows:

"First degree murder is the killing of a human being:

"(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery; ...."

The indictment alleged that Rault "committed first degree murder of one Jane Ellen Francioni, while in the perpetration of an aggravated rape and aggravated kidnapping." At the guilt or innocence stage, the jury found Rault guilty as charged. Article 905.4, LSA–C.Cr.P., provided at the time in question with respect to statutory aggravating circumstances for sentencing purposes, in pertinent part, as follows:

"The following shall be considered aggravating circumstances:

"(a) the offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, aggravated arson, aggravated escape, armed robbery, or simple robbery;

" ....

---

**2.** Also, in response to Rault's application to this Court for certificate of probable cause, the state urges, *inter alia,* that each of Rault's three

claims is barred as an abuse of the writ under Rule 9(b).

"(g) the offense was committed in an especially heinous, atrocious, or cruel manner; or

"(h) the victim was a witness in a prosecution against the defendant, gave material assistance to the state in any investigation or prosecution of the defendant, or was an eye witness to a crime alleged to have been committed by the defendant or possessed other material evidence against the defendant."

At the sentencing stage, the jury recommended the death sentence and found the following aggravating circumstances:

1. "The offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping."

2. "The offense was committed in an especially heinous, atrocious, or cruel manner."

3. "The victim was an eye witness to a crime alleged to have been committed by the defendant or possessed other material evidence against the defendant."

On direct appeal, the Louisiana Supreme Court held that there was sufficient evidence that Rault was engaged both in aggravated rape and in aggravated kidnapping when he murdered Jane Francioni. *State v. Rault*, 445 So.2d at 1212–13. In reviewing the sentence, the Louisiana Supreme Court noted the three above-referenced aggravating circumstances which the jury had found. It described the first as a finding that Rault "was engaged in the perpetration or attempted perpetration of aggravated rape *and* aggravated kidnapping," and went on to state that "[t]he evidence is clearly sufficient to support the jury's finding with respect to the commission of aggravated rape *and* aggravated kidnapping." *Id.* at 1219 (emphasis added). The Louisiana Supreme Court ruled that evidence also sustained the second aggravating circumstance found by the jury, stating:

"The evidence supports the jury's finding that the crime was committed in an especially cruel, atrocious and heinous manner. Two gunshot wounds were inflicted, one of which would have caused a

slow, painful death in a matter of hours, while the other would have caused death within five to ten minutes. It is apparent that Ms. Francioni had been shot by the bullet which would have caused a slow painful death at the time she was observed by the U.N.O. students. During a lengthy time interval, she was taken to a 'remote area, raped, and shot again. She was dragged around by a belt placed about her neck. Obviously, she suffered intense mental and physical pain during the ordeal. Although her throat was cut and her body set afire after she died, she had already undergone severe trauma. The factual circumstances indicate torture and the pitiless infliction of unnecessary pain." *Id.*

The Louisiana Supreme Court did not pass on the validity of the third aggravating circumstance found, relating to the victim's being an eye witness of a crime committed by the defendant. *Id.*

Rault contends that the first aggravating circumstance found, that he was engaged in the perpetration of aggravated rape and aggravated kidnapping, duplicates the element of first degree murder, that the murder was committed in the course of perpetrating aggravated rape and aggravated kidnapping. He contends that this constitutes impermissible double counting for purposes of authorizing capital punishment. Rault relies in this regard on *Collins v. Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985). He also calls attention to the dissenting opinions in *Wiley v. Mississippi*, —— U.S. ——, 107 S.Ct. 304, 93 L.Ed.2d 278 (1986) (dissent from denial of *certiorari*), and in *Williams v. Ohio*, —— U.S. ——, 107 S.Ct. 1385, 1387, 94 L.Ed.2d 699 (1987).

We reject this contention and find it to be without merit and not to warrant issuance of a certificate of probable cause or stay of execution, for the following reasons.

■ In the first place, we have consistently rejected the *Collins* theory, and have continued to do so after the grant of *certiorari* in *Lowenfield*. *See Wingo v. Blackburn*, 783 F.2d 1046, 1051 (5th Cir.1986),

*cert. denied,* — U.S. —, 107 S.Ct. 1984, 95 L.Ed.2d 823 (1987); *Lowenfield; Berry v. Phelps,* 819 F.2d 511, 516–17 (5th Cir.), *stay of execution denied,* — U.S. —, 107 S.Ct. 3179, 96 L.Ed.2d 668 (1987); *Celestine v. Butler,* 823 F.2d 74, 79, (5th Cir. 1987), *stay of execution denied,* — U.S. —, 108 S.Ct. 6, — L.Ed.2d — (1987); *Watson v. Butler,* 823 F.2d 842, — (5th Cir., 1987), *stay denied by equally divided vote,* — U.S. —, 108 S.Ct. 6, — L.Ed.2d — (1987).

■ In the second place, we observe that there is not an exact duplication between the elements of first degree murder relevant to this case and the first statutory aggravating circumstance found by the jury. The reason for this is that in order to convict for first degree murder, it was not necessary to show that Rault was engaged in the perpetration or attempted perpetration of *both* aggravated rape *and* aggravated kidnapping; rather, it sufficed to show

that he was engaged in the perpetration or attempted perpetration of *either* of those two offenses. While this was also true with respect to the statutorily defined first aggravating circumstance, nevertheless, the jury in regard to it found that he was engaged in the perpetration of *both* aggravated rape *and* aggravated kidnapping, and the Louisiana Supreme Court found that the evidence sustained this finding as to *both* those offenses. Consequently, the jury's finding respecting the first statutory aggravating circumstance embraced statutory findings beyond those necessary for Rault's conviction of first degree murder. Otherwise stated, to convict Rault of first degree murder it was necessary to find that he was then engaged in the perpetration or attempted perpetration of only *one* other named serious felony; the jury found, as an aggravating circumstance, that he was then engaged in the perpetration or attempted perpetration of *two* other named serious felonies.[3]

3. We recognize that the foregoing may be inconsistent with the following from the opinion of Justice Brennan, in which Justices Marshall and Blackmun joined, dissenting from the denial of stay of execution in *Watson v. Butler,* — U.S. —, 108 S.Ct. 6, — L.Ed.2d — (1987):

"If the commission of armed robbery and aggravated rape constitutes only a single aggravating circumstance, then Watson presents exactly the same claim as Lowenfield. In the majority of cases that have required a tally of aggravating circumstances, the Louisiana Supreme Court has considered the presence of more than one felony under Article 905.4(a) to count as only a single aggravating factor. *See, e.g., State v. Carmouche,* slip op. (La. May 18, 1987); *State v. Bates,* 495 So.2d 1262 (La. 1986); *State v. Andrews,* 452 So.2d 687 (La. 1984); *State v. Jordan,* 420 So.2d 420 (La. 1982); *State v. Myles,* 389 So.2d 12 (La.1979). In some other cases, including this one, *State v. Watson,* 449 So.2d 1321 (La.1984), the Louisiana Supreme Court appears to have viewed each felony as a separate aggravating factor. That court, however, has not had the opportunity to address this issue explicitly." (Footnote omitted.)

With respect, we view the matter somewhat differently. Our reading of the cited decisions of the Louisiana Supreme Court does not indicate to us that that court was expressly addressing the question, one way or another, and it appears to us that the passing references to aggravating circumstances as being one or two

were not intended to have significance. *Andrews* did not involve a capital sentence. In *Bates,* it appears that but a single "other" felony (armed robbery) was involved under article 905.4(a). 495 So.2d at 1275. *Jordan* refers in passing to the fact that "[t]he jury found one aggravating circumstance—that the offender was engaged in the perpetration or attempted perpetration of an armed robbery and/*or* aggravated burglary." 420 So.2d at 428 (emphasis added). *Myles* states that "the jury found one aggravating circumstance to exist: '(a) the offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, *or* armed robbery.'" 389 So.2d at 23 (emphasis added).

In *State v. Carmouche,* 508 So.2d 792 (La. 1987), the jury found that the murder was committed while perpetrating aggravated rape, aggravated burglary, *and* armed robbery, and was committed in an especially heinous manner. The opinion states:

"The jury's finding that defendant committed this murder while engaged in the perpetration of aggravated rape is clearly supported by the evidence. Accordingly, it is unnecessary for us to consider the sufficiency of the evidence for the findings that defendant committed this murder while engaged in the perpetration of aggravated burglary and armed robbery.

"Since the jury found one statutory aggravating circumstance (La.Code Crim.P. art. 905.4(a)) and that circumstance is clearly supported by the record, we find it unnecessary

■ In the third place, even if the first aggravating circumstance found by the jury merely duplicated the elements of the offense, and even if it was hence itself invalid as a statutory aggravating circumstance, nevertheless, the jury also found two other statutory aggravating circumstances, one of which two was sustained by the Louisiana Supreme Court. In this setting, the invalidity of the first aggravating circumstance does not constitutionally impair the death sentence or render it improper under Louisiana law. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Welcome v. Blackburn,* 793 F.2d 672, 678 (5th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1985, 95 L.Ed.2d 825 (1987); *State v. Rault,* 445 So.2d at 1219. *See also Moore v. Maggio,* 740 F.2d 308, 321 (5th Cir.1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985). Specifically, we have held that a double counting claim as to one statutory aggravating circumstance found is rendered immaterial by the fact that a second statutory aggravating circumstance has also been validly found. *Brogdon v. Butler,* 824 F.2d 338, 340–342 (5th Cir.1987); *Celestine; Glass v. Blackburn,* 791 F.2d 1165, 1173 (5th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1985, 95 L.Ed.2d 824 (1987). Here as noted, the jury also found that the offense was committed in an especially heinous, atrocious, and cruel manner, and the Louisiana Supreme Court sustained this finding. We have held that a very similar aggravating circumstance is constitutionally valid, *see Johnson v. Thigpen,* 806 F.2d 1243 (5th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987), and indeed Rault does not attack the abstract legal validity of this circumstance. However, Rault does assert that the evidence is insufficient to sustain the jury's finding in respect to it. Having previously thoroughly reviewed the trial record in this case, we disagree. The facts are set out in our prior opinion on Rault's first federal habeas, *Rault v. State,* 772 F.2d 117 (5th Cir.1985), and in the opinion of the Louisiana Supreme Court, *State v. Rault,* 445 So.2d 1203 (La.1984). As heretofore noted, the Louisiana Supreme Court specifically rejected this contention. We agree with its determination.

■ Finally, Rault's claims in respect to the invalidity of the first aggravating circumstance found, by reason of alleged double counting, and in respect to the invalidity of the second aggravating circumstance found, by reason of claimed insufficiency of the evidence, are both barred as being an abuse of the writ, contrary to Rule 9(b), because neither claim was submitted in either of Rault's prior two federal habeas petitions. Rault seeks to excuse his failure to raise the double counting claim earlier on the ground that he did not realize it was tenable until on June 22, 1987 the United States Supreme Court granted *certiorari* in *Lowenfield,* in part upon that issue.

to decide whether the jury erred in finding that the offense was committed in an especially heinous, atrocious, or cruel manner (the second aggravating circumstance)." *Id.* at 801.

In *Watson,* findings that the offense was committed in the perpetration of aggravated rape and in the perpetration of armed robbery (article 905.4(a)) and that the offender had a significant prior history of criminal activity (article 905.4(c)) are referred to as findings of "three aggravating circumstances" and the last mentioned as "[t]he third aggravating circumstance." 449 So.2d at 1333.

We believe it clear under Louisiana law that the number of statutory aggravating circumstances found has no legal or categorical significance, so long only as *one* statutory aggravating circumstance is found (and it is legally valid and supported by the evidence). Further, under the clear wording of article 905.4(a) and the holdings of cases such as *Carmouche,* only *one* of the offenses listed alternatively in article 905.4(a) need be found in order to constitute a valid statutory aggravating circumstance. Moreover, the *Lowenfield* issue does not raise a question of Louisiana law—under Louisiana law the "double counting" is clearly proper. The *Lowenfield* question, as we apprehend it, is whether the Eighth Amendment allows capital punishment where nothing declared by statute to constitute one of the aggravating circumstances necessary to a death sentence is proved which was not also necessary to prove in order to convict of the capital crime charged in that particular case. That situation does not exist where two other concurrent felonies—the commission of *either* of which during an intentional murder is statutorily defined as an aggravating circumstance—are found at sentencing but proof of only one was necessary for conviction of the underlying offense.

Rault also states that his claim that the evidence was insufficient as to the second aggravating circumstance found, the especially heinous and cruel manner in which the murder was committed, did not become relevant for federal habeas purposes until the double counting claim, with respect to the first aggravating circumstance found, became viable. While we are inclined to agree with the latter condition, we reject the former. We hold that Rault, represented by competent counsel throughout, had no valid reason to withhold his double counting claim respecting the first aggravating circumstance from either his first or his second federal habeas petition. We note that the *Collins* case, relied on by Rault in respect to his double counting claim, was decided by the Eighth Circuit on January 31, 1985, which was three and a half months before Rault's initial federal habeas was filed on May 14, 1985 and some nineteen months before his second federal habeas was filed on September 12, 1986. We found abuse of the writ on this same basis in *Berry*, 819 F.2d at 516. Indeed, the present case is even more indicative of abuse of the writ than *Berry*. *See also Jones v. Estelle*, 722 F.2d 159 (5th Cir. 1983). Again, we recognize that the district court did not address the abuse of the writ issue. However, as previously noted, the district court's decision was rendered before the state had had an opportunity to file a reply to Rault's third federal habeas petition, and the following day the state did file a response which raised abuse of the writ. Both here and below, Rault has sought to justify his withholding of these claims from his prior federal habeas petitions, giving the above-described reasons, and we have held that these reasons are wholly insufficient. We further hold, as a matter of law, that the omission of these claims from the prior petitions constitutes an abuse of the writ, and that the ends of justice would not be served by excusing or overlooking this abuse.

In sum, we hold that Rault's third claim is invalid on its merits, and presents on its merits no ground for issuing a certificate of probable cause or stay of execution. We further hold that the omission of this claim from Rault's prior two federal habeas petitions constitutes an unexcused abuse of the writ under Rule 9(b) and that enforcement of the bar of Rule 9(b) would not result in a miscarriage of justice, and for this independent reason also the third claim presents no grounds for a certificate of probable cause or stay of execution.

### Conclusion

We reject each of Rault's claims on their merits, and hold that none of them present on their merits grounds for issuance of a certificate of probable cause or stay of execution. Alternatively, we hold that each of his claims constitutes an unexcused abuse of the writ, and that application of the bar of Rule 9(b) would not constitute a miscarriage of justice, and that also for this independent reason none of the claims warrants issuance of a certificate of probable cause or stay of execution. Accordingly, we deny a certificate of probable cause and we dismiss the appeal. We likewise deny the application for stay of execution.

Certificate of Probable Cause DENIED; Appeal DISMISSED; Application for Stay of Execution DENIED.